*Attorney Grievance Commission v. Benjamin N. Ndi*
Misc. Docket AG No. 14, September Term 2017

**Attorney Discipline – Misappropriation of Client Funds – Unauthorized Practice of Law – Misrepresentations to Clients and to Bar Counsel – Disbarment.** Disbarment is the appropriate sanction when an out-of-state attorney failed to represent two clients competently and diligently and to communicate with them adequately concerning their cases, failed to inform potential clients of the jurisdictional limitations of his law practice, engaged in the unauthorized practice of personal injury law in Maryland and mishandled the proceeds of that action, failed to respond to Bar Counsel's investigation in a timely manner, and made various dishonest and false statements to his clients and Bar Counsel. MLRPC 1.1, 1.3, 1.4, 1.5, 1.15, 1.16, 5.5, 7.1, 7.5, 8.1, 8.4; Maryland Rules 19-308.1, 19-308.4, 19-404 (formerly Maryland Rule 16-604).

Circuit Court for Montgomery County
Case No. 433731
Argument: April 10, 2018

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 14

September Term, 2017

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

V.

BENJAMIN N. NDI
_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: May 1, 2018

This attorney disciplinary matter concerns Respondent Benjamin N. Ndi, an attorney licensed in New York, but not in Maryland, who committed various violations of the rules of professional conduct, as well as of a related rule concerning the use of attorney trust accounts, while providing immigration and other legal services in Maryland. Mr. Ndi did not cooperate fully with Bar Counsel's investigation into his activities in Maryland, failed to respond to discovery requests in this proceeding, and did not appear at the evidentiary hearing before the hearing judge or at oral argument before this Court. Following oral argument, we disbarred Mr. Ndi and ordered the Clerk of this Court to place his name on the list of attorneys who are excluded from the practice of law in Maryland.[1] We now explain the reasons why we took that action.

# I

## Background

### A.  *Procedural Context*

On June 8, 2017, the Attorney Grievance Commission ("Commission"), through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action against Mr. Ndi.  The Commission charged him with violating Rules 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 1.15 (safekeeping property), 1.16 (declining or terminating representation), 5.5 (unauthorized practice of law), 7.1 (communications concerning lawyer's services), 7.5 (firm names and letterheads), 8.1 (bar admission and disciplinary matters), and 8.4 (misconduct) of the Maryland Lawyers' Rules of Profession-

---

[1] *See* Maryland Rule 19-742(g).

al Conduct ("MLRPC"), as well as Maryland Rule 19-308.1 (bar admission and disciplinary matters) and Maryland Rule 19-308.4 (misconduct) of the Maryland Attorneys' Rules of Professional Conduct ("MARPC").[2] He was also charged with violating former Maryland Rules 16-603 (duty to maintain trust account) and 16-604 (trust account – required deposits).[3]

Pursuant to Maryland Rule 19-722, this Court designated Judge Joan E. Ryon, of the Circuit Court for Montgomery County, to conduct a hearing and to provide findings of fact and recommended conclusions of law. Mr. Ndi retained counsel, who filed an answer on his behalf. The answer admitted some of the allegations, denied others, and asserted a lack of information or memory as to others. Mr. Ndi's counsel subsequently filed a motion to withdraw his appearance, which the hearing judge granted on December 7, 2017. No new counsel entered an appearance, nor did Mr. Ndi appear on his own behalf.

Mr. Ndi did not respond to the written discovery requests of Bar Counsel or appear for his deposition noticed by Bar Counsel. As a result, Bar Counsel filed a motion for sanctions. Mr. Ndi did not respond to that motion. The hearing judge granted the motion,

---

[2] Effective July 1, 2016, the MLRPC were renamed the MARPC and recodified in Title 19 of the Maryland Rules. Because Mr. Ndi's misconduct straddled both sides of the effective date of the recodification of the rules of professional conduct, he managed to commit violations of the same rules of professional conduct in their guise as both the MLRPC and the MARPC. Because there is no substantive difference in the two codifications of the rules invoked by the Commission, for simplicity we shall use the shorter designations of the MLRPC throughout this opinion – *e.g.*, "Rule 8.4" rather than "Maryland Rule 19-308.4."

[3] Effective July 1, 2016, these two rules were re-codified as Maryland Rules 19-403 and 19-404 respectively.

striking Mr. Ndi's answer and precluding him from introducing any testimony or evidence at trial other than testimony as to mitigation.

The hearing proceeded as scheduled on January 8, 2018. Mr. Ndi did not appear.

The hearing judge issued findings of fact and recommended conclusions of law on February 7, 2018. Neither party filed exceptions. This Court heard oral argument on April 10, 2018. Mr. Ndi did not appear.

## B. Facts

We summarize the hearing judge's findings of fact and the exhibits submitted at the hearing as follows. As no exceptions have been filed, we treat the findings of fact as established. Maryland Rule 19-741(b)(2)(A).

### Bar Membership and Office Location

Mr. Ndi was admitted to the New York Bar in 2003. Mr. Ndi is not a member of the Maryland Bar. During 2016 and 2017, he was in "delinquent status" with respect to his New York Bar membership for failure to pay fees associated with that membership. During that time period, he maintained an office for the practice of law in Montgomery County, Maryland.

### Representation of Martin Ndamchi Tamon

Martin Ndamchi Tamon, a native and citizen of Cameroon, entered the United States on September 9, 2005, on a tourist visa. On September 6, 2006, Mr. Tamon filed a *pro se* application for asylum with the United States Citizenship and Immigration Services. Mr. Tamon's asylum application was referred to the federal immigration court in Baltimore.

3

In early February 2007, Mr. Tamon retained Mr. Ndi to represent him in the immigration matter and paid him $2,000 for that purpose. In his notice of appearance and subsequent filings, Mr. Ndi indicated a Takoma Park, Maryland, office address. Mr. Ndi appeared with Mr. Tamon before an immigration judge on February 7, 2007, at a master calendar hearing. Mr. Ndi told the court that Mr. Tamon intended to pursue his asylum application before the immigration court. The immigration judge informed Mr. Ndi that the asylum application was not in the proper format and ordered Mr. Ndi to re-file the application in accordance with the immigration court's guidelines by April 9, 2007.

Mr. Ndi failed to re-file Mr. Tamon's asylum application. On April 23, 2007, the immigration judge deemed Mr. Tamon's asylum application to be abandoned and issued an order that allowed Mr. Tamon 30 days to leave the United States, after which the order would become an order of removal. A final order of removal would result in Mr. Tamon's arrest and deportation.

Mr. Ndi did not promptly inform Mr. Tamon of the immigration court's order. Mr. Tamon learned of the order only when he called Mr. Ndi's office in May 2007 to check on the status of his case.

On June 7, 2007, Mr. Ndi filed a motion with the immigration court to re-open Mr. Tamon's case. In the motion, he asserted that he was a solo practitioner and had been "overwhelmed with work and inadvertently failed" to re-file the asylum application. The motion incorrectly stated that Mr. Tamon had been ordered removed *in absentia – i.e.*, because he had failed to appear for his case – and was based on case law regarding

4

removals *in absentia*. As indicated above, the removal order was the result of Mr. Ndi's failure to re-file the asylum application in the proper format. Attached to the motion was an asylum application, but without the supporting documentation that had accompanied Mr. Tamon's original *pro se* application.

On June 22, 2007, the immigration court denied the motion to re-open Mr. Tamon's case. On August 2, 2007, Mr. Ndi filed an untimely motion to reconsider that denial, but failed to specify any error of fact or law in the decision. Once again, the stated basis of Mr. Ndi's motion was that he was a solo practitioner who was overwhelmed with work. The next day, the immigration court denied the motion to reconsider.

On November 23, 2007, Mr. Tamon filed a *pro se* appeal with the Board of Immigration Appeals ("BIA"). Mr. Tamon explained that he had experienced difficulty obtaining documents from Cameroon. However, the BIA denied his appeal as untimely.

*Representation of Joseph Shonga*

Joseph Shonga was also an immigration client of Mr. Ndi. On November 12, 2015, Mr. Shonga was in an automobile accident in Baltimore and sustained injuries. On January 12, 2016, Mr. Ndi visited Mr. Shonga at his home in Laurel, Maryland, and offered to represent Mr. Shonga in seeking compensation for those injuries. According to Mr. Shonga, they entered into a written contingent fee agreement under which Mr. Ndi would receive 31% of any recovery as his fee. Mr. Ndi did not provide Mr. Shonga with a copy of the contingent fee agreement. During the meeting, Mr. Ndi said that he would pay all of Mr. Shonga's medical bills from the settlement and

5

then "see what is left." Mr. Shonga provided Mr. Ndi with five bills related to his medical treatment.

On April 29, 2016, Mr. Ndi called Mr. Shonga and asked him to come to his office in Takoma Park. That same day, they met at the office, which was known as the "Center for Immigration Law." Mr. Ndi told Mr. Shonga that the insurance company had offered to settle the case for $17,000 or $18,000. At Mr. Ndi's recommendation, Mr. Shonga signed a settlement agreement.

Mr. Shonga also signed a "Settlement Statement" that represented that the total distribution was $17,000. According to the Settlement Statement, Mr. Ndi disbursed $8,000 to Mr. Shonga as the "Amount to Clients." He withheld $5,500 as the "Amount to Attorneys," which included: his fee of $5,666.67, increased by "Costs and Disbursements" of $900 ($100 for "Consultation," $300 for "Court fees," and $500 for "Paralegal Research"), and reduced by a "Discount" of $1,066.67. Mr. Ndi also withheld $3,500 from Mr. Shonga's total settlement for "Reimbursement of Client Costs," which included $1,000 for "Emergency Room Bill" and $2,500 for "Bill Maryland Health Care Clinic."

Mr. Ndi gave Mr. Shonga a check for $8,000 written on an account of the Center for Immigration Law, which contained the notation "PI Settlement." The account was not an attorney trust account.

Mr. Ndi failed to promptly pay all of Mr. Shonga's medical bills. Mr. Ndi made the following disbursements to Mr. Shonga's medical providers:

6

1) On or about June 21, 2016, a check to Emergency Medicine in the amount of $124.86;

2) On or about June 21, 2016, a check to Neurological Medicine PA in the amount of $248.34;

3) In or about October 2016, a payment to Progressive MRI LLC in the amount of $250.00;

4) On or about November 20, 2016, a payment to Doctor's Community Hospital in the amount of $114.21; and

5) On or about March 2017, a payment to Carefirst BlueCross BlueShield in the amount of $377.80.

Mr. Ndi did not disburse any amount in connection with "Maryland Health Care Clinic."

In the months after he signed the settlement statement, Mr. Shonga continued to receive bills from health care providers. However, Mr. Shonga was unable to reach Mr. Ndi to obtain information about the status of payments to health care providers.

On October 23, 2017, Maryland Healthcare Clinics filed a lawsuit against Mr. Shonga for failure to pay its bill.

*Bar Counsel Investigation*

Mr. Tamon filed a complaint concerning Mr. Ndi with Bar Counsel on March 24, 2016. On April 27, 2016, Bar Counsel wrote to Mr. Ndi at the Takoma Park, Maryland, address provided by Mr. Tamon and requested a response to the complaint within 15 days. Mr. Ndi failed to respond to that letter, as well as to a follow-up letter from Bar Counsel the next month.

On June 7, 2016, Bar Counsel sent copies of its previous correspondence and Mr. Tamon's complaint to Mr. Ndi at his Maryland addresses in Lanham and Burtonsville

7

and asked Mr. Ndi for information concerning his current business address, areas of practice, and bar admissions.

In a letter dated June 20, 2016, Mr. Ndi provided an incomplete response to Bar Counsel's request on a letterhead for the Law Offices of Okedi & Ndi, Attorneys at Law, at a Burtonsville, Maryland, address. The letterhead did not specify that Mr. Ndi was licensed only in New York, or otherwise indicate jurisdictional limitations. Mr. Ndi did not provide a copy of Mr. Tamon's file, nor did he provide his email address or a list of jurisdictions in which he was authorized to practice law.

The hearing judge found that Mr. Ndi made knowing and intentional misrepresentations to Bar Counsel in the June 20, 2016 letter. First, Mr. Ndi blamed Mr. Tamon for Mr. Ndi's failure to re-file Mr. Tamon's asylum application on time. Mr. Ndi wrote: "The fact that I stated that I was a sole Practitioner was not the cause of the delay. I forgot to add the statement that we also received the documents late from the complainant." This statement was false and misleading because the immigration judge had only required that Mr. Ndi re-file the asylum application that Mr. Tamon had previously filed, except in the proper format. No new documentation had been required.

Second, Mr. Ndi falsely stated that his practice was "limited to Immigration Law." In fact, as indicated above, Mr. Ndi had recently engaged in the unauthorized practice of personal injury law in Maryland in Mr. Shonga's case.

On July 14, 2016, Bar Counsel wrote to Mr. Ndi and requested the following: (1) the address where he currently worked or maintained an office; (2) a list of jurisdictions where he was licensed to practice law and the date of admission in each jurisdiction; (3)

8

certificates of good standing from each jurisdiction in which he was admitted to practice; (4) an explanation for his failure to identify any jurisdictional limitations; and (5) Mr. Tamon's client file.

On July 26, 2016, Mr. Ndi responded to Bar Counsel on stationery with a letterhead that indicated a Burtonsville, Maryland, address. However, it did not state that his practice was limited to federal immigration matters. In the letter, Mr. Ndi stated that he was admitted to practice law in New York, that he was in "active practice," and that he specialized in immigration law. However, he failed to provide a certificate of good standing from New York. In the body of that letter, he provided an excerpt of what he said was his "office letterhead." The office letterhead purported to be for the "Law Offices of Okedi & Ndi, Attorneys at Law" at a Washington, D.C. address. A notation indicated Mr. Okedi was admitted in Maryland and New York, that Mr. Ndi was admitted in New York, and that a third attorney was admitted in Maryland and the District of Columbia.

Subsequently, by letter dated August 1, 2016, the bar licensing authority in New York advised Bar Counsel that, as of July 2015, Mr. Ndi was in delinquent status as a result of his failure to pay bar dues.

Shortly thereafter, on September 9, 2016, Mr. Shonga filed a complaint with Bar Counsel concerning his experience with Mr. Ndi. Bar Counsel sent a copy of the complaint to Mr. Ndi on September 29, 2016 and requested a response. In a separate letter the next day, Bar Counsel also requested again that Mr. Ndi provide a certificate of good standing from New York. Mr. Ndi failed to respond to either request. Bar Counsel sent a follow-up letter concerning Mr. Shonga's complaint by certified mail, but the correspondence was returned to Bar Counsel marked "Return to Sender, Unable to Forward."

9

Five months later, on March 7, 2017, Mr. Ndi belatedly replied to the request for a certificate of good standing with a letter that enclosed a certificate of good standing from New York dated March 1, 2017. The cover letter was on letterhead with a Lanham, Maryland, address.

On March 16, 2017, Mr. Ndi also belatedly responded to Bar Counsel's request for a response to Mr. Shonga's complaint. The letterhead of that letter included the same Washington, D.C. address and legend as the letterhead sent to Bar Counsel the previous July and also indicated "in care of" a Lanham address.

In the March 16, 2017 letter, Mr. Ndi stated that he had not received Bar Counsel's inquiries because he was working in New York. He also stated that Mr. Shonga had signed the settlement agreement and picked up his settlement check at Mr. Ndi's Washington, D.C. office. (Mr. Ndi was not licensed to practice law in the District of Columbia). Mr. Ndi enclosed a copy of the retainer agreement, which stated that he would receive one-third of any recovery. He also enclosed a copy of a settlement sheet dated April 29, 2016 and copies of cancelled checks drawn on an account of the Center for Immigration Law in Takoma Park, purportedly to show that Mr. Shonga's medical bills had been paid. The account was not an attorney trust account. Mr. Ndi did not provide a copy of the check received from the insurance company.

Although the settlement sheet represented that $2,500 would be disbursed to "Maryland Health Care Clinic," the other enclosures did not include a copy of a check to that entity. The hearing judge found that Mr. Ndi knowingly and intentionally misrepresented to Mr. Shonga that he had disbursed $2,500 to that entity to pay Mr.

10

Shonga's bill.  The hearing judge also found that Mr. Ndi made misrepresentations to Bar Counsel in the March 16, 2017 letter concerning the amount of the settlement withheld from Mr. Shonga and his knowledge of the medical bills to be paid.

*The Website of Mr. Ndi's Firm*

As of July 14, 2016, the law firm of Okedi, Ndi & Associates maintained a website at <https://lawofficesokedindi.wordpress.com>.  The website listed the members of the firm as Mr. Ndi and Gini Okedi, as well as the available services.  The website included an advertisement for "Experienced Litigation & Immigration Attorneys."  The website listed the following areas of practice:  Personal Injury, Complete Immigration Practice, Employment Law, Family Law, Criminal Law-DUI/Traffic, Business Associations, and "General Litigations."  Below the areas of practice, the advertisement provided phone numbers for both Mr. Ndi and Mr. Okedi.  The "About Us" page on the website stated, in pertinent part, that "Attorney Benjamin N. Ndi and Gini Okedi's goals [sic] are to assist both individuals and corporations through counseling and representation in all matters that relate to Immigration, Personal Injury, Family Law, Family Law [sic], Employment Law, Criminal Law, and General Litigation."

# II

## Discussion

Our authority to discipline an out-of-state lawyer who provides legal services in Maryland is reflected in Rule 8.5(a)(2).[4] Under that rule, an attorney who is not admitted in Maryland is subject to the disciplinary authority of this Court if the attorney, among other things: (1) provides or offers to provide any legal services in Maryland or (2) holds himself out as practicing law in Maryland. Based on the facts found by the hearing judge, Mr. Ndi is subject to the disciplinary authority of this Court under both of those prongs.

With respect to the alleged violations of the rules of professional conduct, the hearing judge found that Mr. Ndi committed all but one[5] of the alleged violations. Upon due consideration of the hearing judge's recommended conclusions of law, we hold as follows.

*Failing to Meet Basic Standards*

We agree with the hearing judge that Mr. Ndi violated Rule 1.1 (competence), 1.3 (diligence), 1.4 (communication), and Rule 1.16 (declining or terminating representation).

---

[4] *See* Maryland Rule 19-308.5(a)(2); *see also* Maryland Rule 19-305.5, *comments* 18, 19; *Iowa Supreme Court Attorney Disciplinary Board v. Carpenter*, 781 N.W.2d 263 (Iowa 2010) (applying similar rules of professional conduct to discipline out-of-state lawyer who committed violations in the course of federal immigration practice within the state); *cf. Gadda v. Ashcroft*, 377 F.3d 934 (9th Cir. 2004) (state supreme court's discipline of attorney whose practice was limited to immigration law not preempted by federal law).

[5] Bar Counsel withdrew the alleged violation of Maryland Rule 16-603 (duty to maintain trust account).

Rule 1.1 requires that a lawyer provide competent representation to a client. An attorney violates Rule 1.1 if he "fails to act or acts in an untimely manner, resulting in harm to his or her client." *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319 (2012). Evidence that an attorney failed "to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of Rule 1.1." *Attorney Grievance Comm'n v. McCulloch*, 404 Md. 388, 398 (2008); *see also Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 222-23 (2012).

Rule 1.3 requires a lawyer to act "with reasonable diligence and promptness." Failing to keep a client informed as to the status of the case and failing to respond to the client's inquiries violates that rule. *See Attorney Grievance Comm'n v. Park,* 427 Md. 180, 192 (2012).

Mr. Ndi failed to satisfy the standards of competence and diligence in both cases investigated by Bar Counsel. In Mr. Tamon's case he failed to re-file Mr. Tamon's asylum application with the immigration court in the proper format by the stated deadline, and the asylum application was dismissed as a result. When Mr. Ndi filed a motion to reopen on Mr. Tamon's behalf, he incorrectly stated that Mr. Tamon had been ordered removed *in absentia* and failed to include the supporting evidence that had been submitted with the original *pro se* application. As a result, that motion was denied. He also failed to file a timely motion to reconsider that decision, and the untimely motion he did file failed to state any appropriate rationale. In Mr. Shonga's case, Mr. Ndi violated the standards of competence and diligence by failing to pay Mr. Shonga's medical bill from Maryland Healthcare Clinics, as he had promised.

13

Rule 1.4 requires a lawyer, among other things, to "keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information." Rule 1.4(a)(2), (a)(3). *See Attorney Grievance Comm'n v. Van Nelson,* 425 Md. 344, 354-55 (2012).

Mr. Ndi failed to promptly inform Mr. Tamon that his asylum application had been deemed abandoned and that he had been given 30 days to voluntarily leave the county. Mr. Tamon learned that his asylum application had been dismissed only when he called Mr. Ndi's office in May 2007 to check on the status of his case. In Mr. Shonga's case, Mr. Ndi violated Rule 1.4 by failing to respond to Mr. Shonga's multiple telephone calls concerning his unpaid medical bills.

Rule 1.16 requires in part that:

> (d)  Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

An attorney violates Rule 1.16(d) when the attorney abandons representation of a client, refuses to return records, and refuses to engage in further communications. *Attorney Grievance Comm'n v. Logan*, 390 Md. 313, 318-19 (2005). In Mr. Shonga's case, Mr. Ndi violated Rule 1.16(d) when, after issuing Mr. Shonga a portion of his settlement check, he refused to communicate with him and failed to pass along the remainder of the settlement proceeds.

14

*Mishandling Money Matters*

We agree with the hearing judge that Mr. Ndi violated Rule 1.5 (fees), Rule 1.15 (safekeeping property), and former Maryland Rule 16-604 (trust account – required deposits).

Rule 1.5(a) provides, in part that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." The rule goes on to elaborate on factors used to determine a reasonable fee. The reasonableness of a fee is not measured solely at the outset of the representation; indeed, an otherwise-reasonable fee can become unreasonable if the lawyer fails to earn it. *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012) (an otherwise-reasonable fee became unreasonable because of the respondent-attorney's neglect of the client's matter and abandonment of the client's representation); *Attorney Grievance Comm'n v. Patterson*, 421 Md. 708, 732 (2011) (an otherwise-reasonable fee became unreasonable because of the respondent-attorney's lack of competence and diligence in representing the client).

In Mr. Shonga's case, Mr. Ndi violated Rule 1.5(a) when he took a fee for his unauthorized practice of law in Maryland. Moreover, he apparently retained settlement funds to which he was not entitled – specifically, the $2,500.00 that was owed to Maryland Healthcare Clinics.

Rule 1.15(a) requires, in pertinent part, that a lawyer "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." In particular, the rule requires that funds be kept in an

15

attorney trust account. *See Attorney Grievance Comm'n v. Hamilton,* 444 Md. 163, 188 (2015). Rule 1.15 further requires that:

> (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

> (e) When a lawyer in the course of representation of a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

Mr. Ndi violated Rule 1.15(a) when he failed to hold Mr. Shonga's settlement funds in an attorney trust account separate from his own personal funds. He violated Rule 1.15(d) because he failed to promptly deliver funds to the medical providers to whom Mr. Shonga owed money for treatment arising from the accident. Mr. Ndi received Mr. Shonga's settlement check on April 29, 2016, but did not pay his medical providers for months and, in one case, nearly a year, afterward. He never paid Maryland Healthcare Clinics. Mr. Ndi further violated Rule 1.15(d) when he failed to respond to Mr. Shonga's attempts to obtain an accounting of those funds and payments.

Mr. Ndi violated Rule 1.15(e) in Mr. Shonga's case because he failed to keep funds that were in dispute in a separate account. Mr. Ndi, on behalf of Mr. Shonga, received $17,000 in settlement proceeds. He represented to Mr. Shonga that he would pay all of Mr. Shonga's medical bills from the settlement and then "see what was left." The

settlement check was not deposited into an attorney trust account, an escrow account, or other account separate from Mr. Ndi's own funds. While he paid Mr. Shonga $8,000.00, paid himself $5,500.00, and smaller amounts for medical bills, the disposition of the remaining funds remains in question. Those funds have not been kept separate in violation Rule 1.15(e).

Former Maryland Rule 16-604[6] provided, in pertinent part, that:

> Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution.

In Mr. Shonga's case, Mr. Ndi did not deposit the settlement proceeds into an attorney trust account but apparently used a personal account to hold and disburse the settlement funds.

*Ignoring Jurisdictional Limitations*

We agree with the hearing judge that Mr. Ndi violated Rule 5.5 (unauthorized practice of law), Rule 7.1 (communications concerning lawyer's services), and Rule 7.5 (firm names and letterheads).

Rule 5.5 provides, in part:

> (a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

---

[6] As indicated above, this rule has been re-codified as Maryland Rule 19-404.

(b)  A lawyer who is not admitted to practice in this jurisdiction shall not:

(1)  except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

(2)  hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

Mr. Ndi engaged in the unauthorized practice of law in violation of Rule 5.5(a) and (b).  He represented Mr. Shonga in a personal injury matter in Maryland while not licensed to practice law in this State.  He visited Mr. Shonga at home in Maryland and offered to represent him in a personal injury action arising out of an accident in Baltimore.  He in fact did so, as memorialized in their written contingency fee agreement, then negotiated a settlement with an insurance company, and accepted an offer on behalf of Mr. Shonga.

Mr. Ndi thus held himself out as an attorney licensed to practice law in Maryland and failed to properly disclose his jurisdictional limitations to Mr. Shonga.  His website and some of the letterheads he used also failed to note his jurisdictional limitations.

Rule 7.1 provides, in part:

A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services.  A communication is false or misleading if it:

(a)  contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.

Rule 7.5 provides, in part:

(a)  A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1.  A trade name may be used by a lawyer in private practice if it does not imply a connection

with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.

(b) A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.

Mr. Ndi made multiple false or misleading statements about his services in violation of Rules 7.1(a) and 7.5. Specifically, his June 20, 2016 letter to Bar Counsel used letterhead that failed to disclose that he was licensed only in New York and that his practice was limited to federal immigration matters. His July 26, 2016 and March 16, 2017 letters to Bar Counsel used letterhead that failed to state that his practice was limited to federal immigration matters. *See Attorney Grievance Comm'n v. Johnson*, 363 Md. 598 (2001) (finding a violation where attorney was admitted to practice only in Virginia and the District of Columbia, but his only office was located in Maryland and he did not indicate his jurisdictional limitations on the firm's letterhead).

Mr. Ndi also violated Rules 7.1(a) and 7.5 when he advertised, by way of a website, his practice within the firm of Okedi, Ndi & Associates. The website identified Mr. Ndi and Gini Okedi as the firm's attorneys and stated that they practiced in several areas of law including Personal Injury, Employment Law, Family Law, Criminal Law, "DUI/Traffic," and "General Litigations." Neither the advertisement nor any other page on the website stated that Mr. Ndi was licensed to practice law only in New York or that he was limited to practicing immigration law in Maryland.

19

*Lying, Cheating, and Stealing*

We agree with the hearing judge that Mr. Ndi violated Rule 8.1 (bar admission and disciplinary matters) and various provisions of Rule 8.4 (misconduct).

Rule 8.1 provides:

> An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> (a)  knowingly make a false statement of material fact; or
>
> (b)  fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

During Bar Counsel's investigation of Mr. Tamon's complaint, Mr. Ndi misrepresented that he engaged only in the practice of immigration law when that was not true. In addition, during the investigation of Mr. Shonga's complaint, he misrepresented to Bar Counsel that "additional bills" were unknown to him when the settlement sheet that he prepared for Mr. Shonga identified a bill for Maryland Healthcare Clinics. During the pendency of both investigations, Mr. Ndi repeatedly failed to respond to Bar Counsel's lawful requests for information completely or in a timely manner.

Rule 8.4 provides, in pertinent part that it is professional misconduct for a lawyer to:

> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

20

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

Mr. Ndi violated each of those provisions.

As a consequence of his violating multiple rules of professional conduct, Mr. Ndi violated Rule 8.4(a). *See Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 411 (2009) (internal citations omitted).

Mr. Ndi violated Rule 8.4(b) with regard to Mr. Shonga's matter. It is not necessary that an attorney be charged with, or convicted of, a crime to have violated Rule 8.4(b). It is only necessary that there be clear and convincing evidence that the attorney committed a criminal offense and that the criminal conduct reflected adversely on the lawyer's honesty trustworthiness or fitness as an attorney. *See, e.g., Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 394-95, (1997). Mr. Ndi's misappropriation of funds entrusted to him for Mr. Shonga is a crime pursuant to Maryland Code, Business Occupations & Professions ("BOP") Article, §§10-306 and 10-606; *see Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163 (2015). Mr. Ndi's unauthorized practice of law in Mr. Shonga's matter is a misdemeanor. BOP §§10-601 and 10-606.

The false statements to Bar Counsel in violation of Rule 8.1(a) were misrepresentations that also violated Rule 8.4(c). Additionally, Mr. Ndi violated Rule

21

8.4(c) when he misappropriated portions of Mr. Shonga's settlement, to which Mr. Shonga or his medical providers were entitled.

Finally, an attorney who engages in conduct that violates both Rules 8.4(b) and (c) also usually violates Rule 8.4(d). *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 222 (2006). Mr. Ndi's misconduct, taken as a whole, brings the profession into disrepute and was prejudicial to the administration of justice in violation of Rule 8.4(d). It impeded the prompt resolution of Mr. Tamon's asylum application based on the merits of that application. It also meant that the settlement in Mr. Shonga's case did not achieve its full purpose.

### III

### Sanction

*Aggravating and Mitigating Factors*

In deciding on an appropriate sanction for professional misconduct, this Court considers not only the misconduct itself, but also any aggravating or mitigating circumstances and has looked to a list of factors identified by the American Bar Association. *See Attorney Grievance Comm'n v. Woolery*, 456 Md. 483, 499 n. 10 (2017) (listing aggravating and mitigating factors).

The hearing judge found that there were numerous aggravating circumstances surrounding Mr. Ndi's misconduct. She found that Mr. Ndi had a *selfish motive* because he knew that he should not be engaged in a practice in Maryland beyond federal immigration law and told Bar Counsel in June and July 2016 that he was adhering to that restriction shortly after he had represented Mr. Shonga in a personal injury matter.

22

The hearing judge found that Mr. Ndi had engaged in a *pattern of misconduct* in that he failed to act competently and diligently on behalf of both Mr. Tamon and Mr. Shonga and failed to communicate with both of those clients in a timely and honest manner.

The hearing judge further found that Mr. Ndi had committed *multiple violations* of the rules involving two different clients and had engaged in *bad faith obstruction* of Bar Counsel's investigation by ignoring numerous requests for information and *making false statements* when he did respond to some of those requests.

The hearing judge found that Mr. Ndi had *failed to acknowledge the wrongfulness of his conduct*, when he blamed Mr. Tamon for his own mistakes in the immigration case, and failed to participate in the disciplinary proceedings before the hearing judge.

The hearing judge found that both Mr. Tamon and Mr. Shonga, as immigrants, were *vulnerable victims* of Mr. Ndi's misconduct. She also found that Mr. Ndi had *failed to make restitution* to either client.

The hearing judge found an additional aggravating factor in that the trust account violations, unauthorized practice of law, and misappropriation are *all independent violations of the law*.

Finally, the hearing judge found that there was a likelihood that the misconduct was *likely to be repeated*.

The hearing judge also found that, as a member of the New York Bar since 2003, Mr. Ndi had *substantial experience in the practice of law* – another aggravating factor.

The hearing judge found that, by not appearing in the disciplinary proceeding, Mr. Ndi failed to establish any mitigating circumstances. We note, however, that, while Mr.

Ndi was temporarily in delinquent status with the New York Bar, there is no evidence in the record of any prior discipline against Mr. Ndi – usually a mitigating factor – and that the hearing judge did not make a finding of the converse aggravating factor – prior disciplinary offenses. While we may credit Mr. Ndi with this one mitigating factor, it has minimal weight, especially in the context of an out-of-state attorney who likely would already be disbarred in Maryland if he previously engaged in misconduct in this State without being admitted here.

*Summary*

As this Court has frequently reiterated, the primary objective in sanctioning attorney misconduct is to protect the general public and the integrity of the bar. *Attorney Grievance Comm'n v. Trye*, 444 Md. 201, 224 (2015).

Bar Counsel recommended that Mr. Ndi be disbarred. Although Mr. Ndi violated a baker's dozen of the rules of professional conduct in his representation of Mr. Tamon and Mr. Shonga and the hearing judge found a total of 11 aggravating factors, we do not simply tote up the number of possible violations and aggravating factors to arrive at an appropriate sanction. There can be a certain amount of "piling on" when the same underlying conduct implicates numerous rules. Ultimately, the sanction must be tailored to the particular conduct. However, the case for disbarment is heightened when violations related to basic standards of practice, the handling of client funds, and trustworthy behavior, are committed by an attorney who is not authorized to practice in Maryland to begin with.

In choosing to conduct his practice within the geographical confines of Maryland, Mr. Ndi subjected that practice to the consumer protection rules that govern legal practice

24

in Maryland. While this case arose out of the representation of just two clients, it exposed serious issues as to how Mr. Ndi was practicing law in Maryland as an out-of-state attorney and as to how he dealt with Bar Counsel. Mr. Ndi's failure to participate in these proceedings means that he has not even made the simple assertion that the proven misconduct was an aberration, rather than an exemplar, of his practice.

The attorney in this case was not a novice, yet he practiced personal injury law where he was not licensed to do so, he mishandled client money, he misled the regulatory authority, and he defaulted in the proceeding charged with determining the truth as to his conduct. This was more than negligence or good intentions gone astray. In such a case, disbarment is called for, unless there is very strong mitigation. Here there is none. That is why we issued an order disbarring Mr. Ndi.