*Attorney Grievance Commission v. Mohamed Alpha Bah*, Misc. Docket AG No. 3, September Term, 2019

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent Mohamed Alpha Bah violated Maryland Attorneys' Rules of Professional Conduct 19-301.1 (Competence), 19-301.2(a) (Scope of Representation), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.15(a) and (c) (Safekeeping of Property), 19-301.16(d) (Declining or Terminating Representation), 19-303.2 (Expediting Litigation), 19-305.5(a) (Unauthorized Practice of Law), 19-308.1(b) (Bar Admission and Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct).  Additionally, Respondent violated Maryland Code (2000, 2018 Repl. Vol.), §§ 10-304(a) and 10-306 of the Business Occupations and Professions Article.  These violations arose from Respondent's pattern of neglect of client affairs, including his failure to communicate with his clients or respond to Bar Counsel; failure to deposit and maintain client funds in an attorney trust account until earned; failure to provide clients with refunds of unearned fees; and deceitful and dishonest conduct related to the misappropriation of funds.  Disbarment is the appropriate sanction for Respondent's misconduct.

Circuit Court for Baltimore City
Case No. 24-C-19-002935
Argued: March 5, 2020

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 3

September Term, 2019

ATTORNEY GRIEVANCE COMMISSION OF
MARYLAND

v.

MOHAMED ALPHA BAH

Barbera, C.J.,
McDonald
Hotten
Getty
Booth
Biran
Harrell,
    (Senior Judge, Specially Assigned)

JJ.

Opinion by Barbera, C.J.

Filed: April 10, 2020

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On April 29, 2019, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed in this Court a Petition for Disciplinary or Remedial Action against Respondent, Mohamed Alpha Bah. The Petition concerned ten separate complaints filed by former clients against Respondent and alleged violations of the Maryland Attorneys' Rules of Professional Conduct[1] ("MARPC") 19-301.1 (Competence), 19-301.2(a) (Scope of Representation), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.15(a) and (c) (Safekeeping of Property),[2] 19-301.16(d) (Declining or Terminating Representation), 19-303.2 (Expediting Litigation),[3] 19-305.5(a) (Unauthorized Practice of Law), 19-308.1(b) (Bar Admission and Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct). Additionally, Petitioner alleged that Respondent violated Maryland Code (2000, 2018 Repl. Vol.), §§ 10-304(a) (Deposit of trust money) and 10-306 (Misuse of trust money) of the Business Occupations and Professions Article.

On May 14, 2019, pursuant to Maryland Rule 19-722(a), this Court transmitted this matter to the Circuit Court for Baltimore City and designated the Honorable Althea M. Handy ("the hearing judge") to conduct an evidentiary hearing and make findings of fact

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified without substantive changes in Title 19 of the Maryland Rules. Respondent's alleged misconduct occurred both before and after the recodification. Because the majority of Respondent's misconduct took place after the recodification, we will refer to the MARPC throughout this opinion.

[2] Petitioner withdrew its allegation that Respondent violated Rules 19-30l.15(d) and (e).

[3] Petitioner incorrectly cited 19-302.2 as the Rule concerning expediting litigation.

and conclusions of law in accordance with Maryland Rule 19-727. On July 11, 2019, pursuant to Maryland Rule 19-723(b), Respondent was served with the following: Writ of Summons issued May 17, 2019, by the Circuit Court for Baltimore City; Order of the Court of Appeals; Petition for Disciplinary or Remedial Action; Petitioner's Interrogatories; Petitioner's Request for Production of Documents; and Petitioner's Request for Admission of Facts and Genuineness of Documents.

On August 5, 2019, Petitioner filed a Motion for Order of Default after Respondent failed to answer. On August 14, 2019, the hearing judge issued an Order of Default and scheduled a hearing for September 24, 2019. The Order provided notice informing Respondent that the Order of Default had been entered and that he may move to vacate the Order within thirty days. Respondent failed to file any response to the notice of default.

The circuit court held a hearing on September 24, 2019. Jessica T. Ornsby, Esquire appeared at the hearing to request a continuance of the hearing date on behalf of Respondent, who did not appear.[4] Ms. Ornsby represented to the court that Respondent had not been served with the Petition for Disciplinary or Remedial Action and, having only recently become aware of the disciplinary case against him, would need additional time to retain counsel. The circuit court noted that Petitioner had made several attempts to personally serve Respondent at his home in the District of Columbia and at his office in Baltimore City. Pursuant to Rule 19-723(b), Petitioner served the Client Protection Fund of the Bar of Maryland ("CPF") on July 11, 2019. On July 12, 2019, the CPF mailed the

---

[4] Ms. Ornsby entered her appearance on behalf of Respondent the day of the hearing. Her representation was limited solely to requesting a continuance of the hearing date.

Petition for Disciplinary or Remedial Action, Writ of Summons, Transmittal Order, Petitioner's Interrogatories, Petitioner's Request for Admission of Facts and Genuineness of Documents, and Petitioner's Request for Production of Documents to both Respondent's home and office addresses. On August 14, 2019, the court mailed the Notice of Default Order to both Respondent's home and office addresses; neither was returned undelivered.

The hearing judge, having found that Respondent had been properly served and had already been afforded ample time to retain counsel prior to the hearing date, denied Ms. Ornsby's continuance request. Pursuant to Maryland Rule 2-424(b), the hearing judge admitted and received as evidence Petitioner's Request for Admissions. Respondent is deemed to have admitted both the averments in the Petition and the facts set forth in the exhibits attached to Petitioner's Request for Admission of Facts and Genuineness of Documents, so those matters are treated as conclusively established. *See* Md. Rules 2-323(e), 2-424(b), (d); *Attorney Grievance Comm'n v. Butler*, 456 Md. 227, 231 (2017). The hearing judge issued written findings of fact and proposed conclusions of law, concluding that Respondent had violated the aforementioned provisions of the MARPC and the Business Occupations and Professions Article.

Neither Petitioner nor Respondent filed exceptions. Respondent made no written recommendation regarding sanction; Petitioner recommended disbarment. On March 5, 2020, we heard oral argument, at which only Petitioner appeared. We thereafter issued a per curiam order disbarring Respondent. *Attorney Grievance Comm'n v. Bah*, 467 Md. 561, 561-62 (2020), 2020 WL 1181283, at *1 (Md. March 12, 2020). We explain in this opinion the reasons for that action.

3

# I.

## The Hearing Judge's Findings of Fact

We summarize here the hearing judge's findings of fact, which are supported by clear and convincing evidence.

### *Background*

Respondent was admitted to the Maryland Bar on December 13, 2011. Respondent is not, nor has he ever been, a member of the District of Columbia Bar. At all relevant times, Respondent maintained an office for the practice of law in the District of Columbia until approximately 2016 when he moved his law office to Baltimore City, Maryland.

### *Representation of Thomas Milton Irvin*

In June 2015, Thomas Milton Irvin retained Respondent to assist him in establishing a District of Columbia business, including the preparation and filing of the necessary paperwork with the Internal Revenue Service ("IRS" or "Agency") to obtain 501(c)(3) non-profit status. Respondent agreed to represent Mr. Irvin for a flat fee of $5,500. In June 2015, Mr. Irvin paid Respondent $3,000 and then an additional $2,500 in July 2015. Respondent failed to deposit and maintain Mr. Irvin's funds in an attorney trust account until earned.

In August 2016, Mr. Irvin received a letter from the IRS informing him that additional documentation was required. Mr. Irvin contacted Respondent and advised him that additional documentation needed to be filed with the IRS. Respondent failed to take any action towards filing the required documentation.

In September 2016, the IRS informed Mr. Irvin that his file had been closed because the Agency had not received the required documentation. The IRS explained that the case could be reopened for $400 and that the requested documents still needed to be submitted. Mr. Irvin contacted Respondent and supplied him with the information needed to submit the required documentation. Respondent failed to file the required documentation.

In February 2017, Mr. Irvin received another letter from the IRS informing him that the Agency had not received the required documents and that his case once again would be closed. Between February and July 2017, Mr. Irvin made numerous attempts to contact Respondent. Respondent failed to respond to Mr. Irvin and failed to provide Mr. Irvin with a refund.

*Representation of Tracy Delyn Burton*

In July 2015, Tracy Delyn Burton retained Respondent to represent her in filing a lawsuit against Marcus Smoot for breach of contract and fraud. On September 6, 2015, Ms. Burton executed a retainer agreement which provided that she would pay Respondent a flat fee of $5,245 and that Respondent would receive an additional contingency fee if any recovery was received. Ms. Burton paid Respondent $4,500 at the outset of the representation and then later paid an additional $745. Respondent failed to deposit and maintain Ms. Burton's funds in an attorney trust account until earned.

On October 13, 2015, an associate of Respondent, Luke McQueen, Esquire, filed a complaint on behalf of Ms. Burton in the United States District Court for the District of Maryland. The complaint identified that Ms. Burton was represented by "Bah Legal and

5

Consulting" and included counts of breach of contract, unjust enrichment, fraud, and fraudulent misrepresentation.

On October 14, 2015, the district court issued a summons for Mr. Smoot. Neither Respondent nor Mr. McQueen took any action to ensure that service was timely effectuated. On March 8, 2016, Respondent entered his appearance as lead counsel for Ms. Burton and filed a Motion for Extension of Time to Serve Defendant and Request for New Summons. On March 14, 2016, the court issued an order granting the Motion. On March 21, 2016, the court issued a new summons.

On March 22, 2016, Ms. Burton emailed Respondent and requested that he refund $3,000 of the retainer if the case was not concluded in a timely manner. On March 23, 2016, Ms. Burton received an automatic response from Respondent stating, in part, that he was "not regularly responding to emails and other forms of communication until April 15, 2016."

On July 14, 2016, Respondent filed a Motion for Service by Publication. By order on August 18, 2016, the court granted the Motion. Respondent failed to effectuate service on Mr. Smoot. On October 13, 2016, the court directed Ms. Burton to show cause, within fourteen days, as to why the complaint should not be dismissed due to failure to effect service. On October 26, 2016, Respondent filed a response to the Order to Show Cause and represented to the court that he had made attempts to serve Mr. Smoot via mail and electronic mail but was unsuccessful. Following a status conference on November 7,

2016,[5] the court ordered Ms. Burton to serve Mr. Smoot within sixty days. Respondent failed to take any action to serve Mr. Smoot.

On January 16, 2017, Ms. Burton received a mass email from Respondent stating:

Dear Bah Legal Clients and Friends,

You are receiving this note because you are a potential client, current client, or a former client of Bah Legal and Consulting. Please review the entire message as the information is pertinent to you.

For the last several months Bah Legal has undergone several changes with respect to its operations and management. Going forward, Bah Legal will only perform services for its current clients, former clients, and parties within their networks. For the foreseeable future we are not accepting any new clients (unless they are referred to us from our current client pool).

For the next month we will be solely focused on addressing each and every client as noted below. Please understand, and accept, that we will not be able to respond to anyone, or address any concerns, via email, phone, or text . . . outside of the agenda detailed below.

**Potential Clients**
Thank you for considering us to provide services on your behalf. Between Wednesday January 18, and Monday January 23, Attorney Nnamdi Nwaneri[6] will contact you directly and provide you with 2-3 appropriate referrals for you to consult with. For the record, Bah Legal, and its attorneys, have no financial interest with any referral that we provide to you.

**Current Clients**
Many current clients need a status communication or disengagement letter. Several clients have outstanding services with us. If you are a current client, I will contact you directly about your case. If there are outstanding services, please note that we do not need any further information to complete your

---

[5] The hearing judge's Findings of Fact and Conclusions of Law incorrectly state that the status conference was held on November 7, 2017. The docket sheet reflects that the status conference was held on November 7, 2016.

[6] The hearing judge's Findings of Fact and Conclusions of Law spelled the attorney's name as Nnamdu Nwaneri; the email from Respondent states the attorney's name as Nnamdi Nwaneri.

matter. In the event that additional information is needed, I will contact you directly. I will contact each current client according to the following schedule:

- Litigation (lawsuits) Cases: January 18, 2017 - January 31, 20l7
- Non-Litigation Cases: February 1, 2017 - February 10, 2017

In the event that I am, or have been, tardy with respect to providing you with communications, you can also expect a gift of firm credit for services when I contact you. Again, I wish to remind you that we have your matter under control. However, due to time considerations, I simply cannot respond or address anyone directly, beyond the schedule that has been provided.

**<u>Former Clients</u>**
I will contact you between March 1, 2017 and April 15, 2017, to discuss your current and foreseeable needs to determine if Bah Legal can help provide services.

To everyone, thank you for your attention and Bah Legal looks forward to continuing to be your legal service provider.

On February 22 and February 23, 2017, Ms. Burton sent Respondent emails in which she requested a refund, an accounting, and a copy of her client file. Respondent received Ms. Burton's emails but failed to respond and failed to provide her with a refund.[7] On September 5, 2018, the district court dismissed Ms. Burton's case.

*Representation of BizTech Fusion, LLC/Xadean Ahmasi*

On November 11, 2015, BizTech Fusion, LLC ("BizTech"), through Xadean Ahmasi, President and CEO, retained Respondent to represent the company in a civil suit against NucoreSolutionz, Inc. ("Nucore"). BizTech paid Respondent a flat fee of $7,500.

---

[7] Although the Petition for Disciplinary or Remedial Action states that Respondent failed to provide Ms. Burton with a copy of her client file, accounting, and refund, the hearing judge's Findings of Fact and Conclusions of Law and Petitioner's Request for Admission of Facts and Genuineness of Documents only specify that Respondent failed to provide Ms. Burton a refund.

Respondent failed to deposit and maintain BizTech's funds in an attorney trust account until earned.

On December 15, 2015, Respondent filed a complaint on behalf of BizTech in the Circuit Court for Prince George's County against Nucore alleging breach of contract, tortious interference with contractual relations, unjust enrichment, and civil conspiracy.

While representing BizTech, Respondent amended the fee agreement to require that BizTech pay an additional $5,000 flat fee and a 15% contingency fee. Respondent failed to obtain BizTech's informed consent, in writing, to the modification of the fee agreement.

On January 26, 2017, BizTech and Nucore executed a settlement agreement. The settlement agreement required Nucore to pay BizTech a total of $60,000; $45,000 payable on or before January 27, 2017, and an additional $15,000 payable on or before June 30, 2017. The settlement agreement also contained a consent judgment article in which Nucore agreed to an entry of a judgment against it in the amount of $150,000 if Nucore failed to make any of the scheduled payments.

In June 2017, Mr. Ahmasi received a check from Respondent's law office in the amount of $37,000 as their share of the first Nucore payment. Nucore failed to make the second payment in the amount of $15,000 as scheduled. In July 2017, Respondent and Mr. Ahmasi exchanged emails regarding the possibility of pursuing the consent judgment. Respondent offered to represent BizTech in the consent judgment if BizTech agreed to pay him a new contingency fee. After July 2017, BizTech made numerous attempts to contact Respondent regarding the consent judgment. Respondent failed to respond to BizTech in any manner.

*Representation of Hanna Jenneh Kanu*

On June 1, 2016, Hanna Jenneh Kanu retained Respondent to represent her in a landlord-tenant matter. Ms. Kanu paid Respondent a fee of $3,000, which Respondent failed to deposit in an attorney trust account until earned. Later that month, when Ms. Kanu contacted Respondent to inquire about the status of her case, Respondent knowingly and intentionally misrepresented to Ms. Kanu that he needed an additional $365 from her for "filing fees." Ms. Kanu agreed to pay the additional charge, but the record does not indicate whether Ms. Kanu paid the fee.

In July 2016, Ms. Kanu received a notice to appear in court for a hearing. Ms. Kanu attempted to contact Respondent regarding the hearing. Respondent failed to attend the hearing and Ms. Kanu was forced to represent herself pro se. The court ruled in favor of the landlord and ordered Ms. Kanu evicted from the property.

In August 2016, Respondent negotiated a settlement agreement with Ms. Kanu's landlord that allowed Ms. Kanu to pay the landlord $11,000 to bring her up to date on her payments. On December 23, 2016, Ms. Kanu's case was called for another hearing. Ms. Kanu attempted to contact Respondent regarding the second hearing but was unsuccessful. Respondent failed to attend the second hearing, so, again, Ms. Kanu was forced to represent herself pro se. The court entered a judgment against her in the amount of $26,000.

On January 16, 2017, Ms. Kanu received the same mass email that Ms. Burton received. On February 1, 2017, Ms. Kanu terminated the representation and requested a refund of $3,000, which Respondent failed to provide.

*Representation of Betsey Tyner*

In January 2017, Betsey Tyner retained Respondent to represent her as the landlord in an eviction proceeding in the District Court of Maryland sitting in Prince George's County. Ms. Tyner paid Respondent a flat fee of $995, which Respondent failed to deposit or maintain in an attorney trust account until earned.

On April 17, 2017, Respondent appeared with Ms. Tyner in District Court for a hearing in the eviction case. The court ordered the tenant to vacate the property. In or about June 2017, Ms. Tyner learned that a hearing had been scheduled for later that month. She contacted Respondent, who then knowingly and intentionally misrepresented to her that he needed an additional $500 for "filing fees," which Ms. Tyner paid. Respondent failed to deposit and maintain Ms. Tyner's funds in an attorney trust account until earned. Respondent then misappropriated the $500 he received from Ms. Tyner and used the funds for his personal benefit.

Ms. Tyner arranged a meeting with Respondent to take place on June 15, 2017. Ms. Tyner, who resides in New York, drove to Maryland for the meeting. Respondent cancelled the meeting at the last minute and failed to advise Ms. Tyner of the status of the matter. Respondent did not perform any additional required work in the eviction matter. During the pendency of the representation, Respondent failed to respond to Ms. Tyner's numerous requests for information and failed to keep her informed of the status of the matter.

*Representation of Marie and Morgan Prince*

On April 24, 2017, Marie Prince and her husband, Morgan Prince ("the Princes"), retained Respondent to represent them in a claim against an unlicensed architect and contractor regarding an addition to their home. The Princes paid Respondent an initial fee of $495 and then an additional $1,580 on May 16, 2017. Respondent failed to deposit and maintain the Princes' funds in an attorney trust account until earned.

On June 9, 2017, Respondent filed a complaint on behalf of the Princes against FEM Construction, LLC, Sun Arch, LLC, and the Prince George's County Department of Inspection and Enforcement (collectively "the Defendants") in the District Court of Maryland sitting in Prince George's County. After filing the complaint, however, Respondent failed to perform any substantive work in the case, including failing to propound any discovery.

Throughout the pendency of the representation, Respondent failed to provide timely responses to the Princes' requests for information. The Princes made at least three attempts to schedule a meeting with Respondent, but he failed to meet with them in person. In December 2017, the Princes informed Respondent that they were terminating his services and requested a full refund along with a copy of their client file. Respondent failed to provide the Princes with a refund or a copy of their client file.

*Representation of The W Hair Loft, Inc./Wade Menendez*

On October 25, 2016, The W Hair Loft, Inc., through its owner, Wade Menendez, retained Respondent to file two trademark applications with the United States Patent and Trademark Office ("USPTO") and to prepare a non-disclosure agreement. On October 26,

2016, Mr. Menendez paid Respondent a flat fee of $2,695 and $700 for estimated expenses. Respondent failed to deposit and maintain Mr. Menendez's funds in an attorney trust account until earned.

Between November 2016 and March 2017, Respondent failed to take any action to advance the representation. Respondent filed two trademark applications with the USPTO: one application for "Wade the Barber" on April 6, 2017, and another application for "The W Hair Loft" on June 2, 2017.

On June 27, 2017, the USPTO sent Respondent notice that the "Wade the Barber" trademark application was deficient and that additional information was required. The USPTO advised Respondent that a response was required within six months or the application would be deemed abandoned. Respondent failed to respond to the USPTO. Respondent also failed to advise Mr. Menendez of the June 27 correspondence and his subsequent lack of response to the USPTO.

On September 10, 2017, the USPTO sent Respondent notice that "The W Hair Loft" trademark conflicted with a previously registered trademark. The USPTO offered Respondent an opportunity to present argument in favor of registration by addressing the potential conflict between the two trademarks. The USPTO advised Respondent that a response was required within six months or the application would be deemed abandoned. Respondent failed to respond to the USPTO. Respondent also failed to advise Mr. Menendez of the September 10 correspondence and his subsequent lack of response.

The USPTO deemed the "Wade the Barber" and "The W Hair Loft" trademark applications abandoned on January 23, 2018, and March 13, 2018, respectively. In addition

13

to Respondent's failures to secure the trademark applications, Respondent also failed to prepare the non-disclosure agreement Mr. Menendez requested. In March 2018, Mr. Menendez terminated the representation and retained successor counsel. On several occasions throughout the representation, Mr. Menendez requested a refund, which Respondent failed to provide.

*Representation of Harry King Sr.*

On June 29, 2017, Harry King Sr. retained Respondent to represent him in a billing dispute involving Hair Club for Men. Mr. King paid Respondent a flat fee of $920, which Respondent failed to deposit and maintain in an attorney trust account until earned.[8] Respondent failed to perform any substantive work in Mr. King's matter. Between July 2017 and May 2018, Mr. King made several attempts to contact Respondent. Mr. King wrote to Respondent and requested a refund. Respondent received Mr. King's correspondence but failed to respond or provide a refund.

*Representation of MBK Trucking, LLC/Khayyam Khan*

On July 20, 2017, MBK Trucking, LLC ("MBK"), through Khayyam Khan, one of MBK's owners, retained Respondent to represent MBK in renegotiating loan payments with various lenders and to pursue a civil suit against Central Truck Center, Inc. On July 20, 2017, Mr. Khan paid Respondent $1,500, which Respondent failed to deposit and maintain in an attorney trust account. On July 28, 2017, Mr. Khan paid Respondent an

---

[8] Petitioner's Request for Admission of Facts and Genuineness of Documents states that Mr. King paid Respondent a flat fee of $995. The hearing judge's Findings of Facts and Conclusions of Law as well as the record show that Mr. King paid a flat fee of $920 (reflecting a fee of $995 minus a $75 senior citizen discount).

additional $3,000. Respondent deposited the $3,000 payment into his attorney trust account, but he withdrew the funds prior to earning them and used those funds for his personal benefit.

Respondent contacted the lenders on behalf of MBK but failed to resolve the matter to Mr. Khan's satisfaction. Respondent also failed to file a complaint or take any other action against Central Truck Center, Inc. Between August 14, 2017 and April 2018, Mr. Khan and his wife, Ana Soto, attempted to contact Respondent several times and inquire about the status of the pending matters. Respondent failed to respond to Mr. Khan or Ms. Soto and failed to provide Mr. Khan with a refund.

*Representation of Carolyn Williams*

In 2016, Carolyn Williams retained Respondent to represent her in an employment discrimination matter on a contingency fee basis. Respondent and Ms. Williams had a disagreement regarding the representation, so Ms. Williams terminated the representation. On April 3, 2018, Ms. Williams retained successor counsel, Alan R. Kabat, Esquire, to represent her in the matter. On April 5, 2018, Mr. Kabat requested a copy of Ms. Williams' complete client file from Respondent in a letter sent via first class mail and by email. Respondent received Mr. Kabat's April 5 correspondence but failed to respond. On April 12, 2018, having received no response, Mr. Kabat faxed a copy of the April 5 letter to Respondent. Respondent received the April 12 facsimile but failed to respond or provide Mr. Kabat with a copy of Ms. Williams' client file.

15

On May 1, 2017, Ms. Burton filed a complaint with Bar Counsel. On May 11, 2017, Bar Counsel wrote to Respondent, provided him a copy of Ms. Burton's complaint, and requested a written response within fifteen days. Respondent received Bar Counsel's letter dated May 11, 2017, but failed to respond. On June 19, 2017, having received no response, Bar Counsel sent Respondent a certified letter requesting a response to Ms. Burton's complaint within ten days. Respondent received Bar Counsel's certified letter dated June 19, 2017, but failed to respond timely.

On June 30, 2017, Ms. Tyner filed a complaint with Bar Counsel. On July 6, 2017, Mr. Irvin filed a complaint with Bar Counsel. On July 11, 2017, Bar Counsel wrote to Respondent, provided him a copy of Ms. Tyner's written complaint, and requested a written response within fifteen days. Respondent received Bar Counsel's letter dated July 11, 2017, but failed to respond timely. On July 17, 2017, Respondent sent an email to Bar Counsel requesting an extension through July 31, 2017, to provide a response to Ms. Burton's complaint. Bar Counsel granted Respondent's extension request. On July 20, 2017, Bar Counsel wrote to Respondent, provided Respondent with a copy of Mr. Irvin's complaint, and requested a written response within fifteen days. On July 31, 2017, Respondent provided Bar Counsel with a written response to Ms. Burton's complaint. On August 18, 2017, Bar Counsel received a letter from Respondent's then-attorney, Tito

16

Castro, Esquire, advising that he would be representing Respondent in his grievance matters.[9]

On September 25, 2017, Ms. Kanu filed a complaint with Bar Counsel. On October 3, 2017, Bar Counsel wrote to Mr. Castro, provided him with a duplicate copy of Mr. Irvin's written complaint, and requested a written response within twenty-one days. Mr. Castro received Bar Counsel's letter dated October 3, 2017. On October 10, 2017, Bar Counsel wrote to Respondent, provided him a copy of Ms. Kanu's complaint, and requested a written response within twenty-one days. Respondent received Bar Counsel's letter dated October 10, 2017, but failed to respond. On November 17, 2017, having received no response regarding Ms. Kanu's complaint, Bar Counsel sent Respondent a second letter, this time via certified mail, again requesting a written response to the complaint. Respondent received Bar Counsel's certified letter dated November 17, 2017, but failed to respond.

On November 17, 2017, having not received a response regarding Mr. Irvin's complaint, Bar Counsel mailed a certified letter to Mr. Castro and requested a written response to the complaint. Mr. Castro received Bar Counsel's letter dated November 17, 2017, but failed to respond.

Also on November 17, 2017, Mr. Ahmasi filed a complaint with Bar Counsel. On November 30, 2017, Bar Counsel wrote to Respondent, provided him a copy of Mr.

---

[9] Mr. Castro directed Bar Counsel to send him "all future communications regarding all of the existing investigations, as of August 18, 2017[.]" As of August 18, 2017, the Irvin, Burton, and Tyner matters were the only Bar Counsel investigations pending.

17

Ahmasi's complaint, and requested a written response within twenty-one days. Respondent received Bar Counsel's letter dated November 30, 2017, but failed to respond. On December 15, 2017, the Princes filed a complaint with Bar Counsel. On January 25, 2018, after receiving no response regarding Mr. Ahmasi's complaint, Bar Counsel sent Respondent a second letter, this time via certified mail, to Respondent's three known addresses, again requesting a written response to the complaint. The letters were returned unclaimed.

In February 2018, Mr. Castro advised Bar Counsel that he was no longer representing Respondent. On February 21, 2018, Bar Counsel wrote to Respondent advising that the Burton, Irvin, Kanu, and Tyner matters had been docketed for further investigation and requesting that Respondent contact Bar Counsel to schedule a date to take his statement under oath. Respondent received Bar Counsel's letter dated February 21, 2018, but failed to provide a timely response. On February 27, 2018, Bar Counsel wrote to Respondent, provided him a copy of the Princes' complaint, and requested a written response within fifteen days. Respondent received Bar Counsel's letter dated February 27, 2018, but failed to provide a timely response.

On March 7, 2018, after receiving no response to the February 21 correspondence, Bar Counsel wrote to Respondent again and requested a response to the Burton, Irvin, Kanu, and Tyner matters within seven days. Respondent received Bar Counsel's letter dated March 7, 2018, but failed to provide a timely response.

On March 16, 2018, Respondent sent an email to Bar Counsel acknowledging receipt of Bar Counsel's letters dated February 21 and March 7. Respondent stated that his

18

wife had recently given birth and that he was in the process of moving his office to Baltimore. Respondent provided Bar Counsel with his Baltimore address and requested an extension through April 1, 2018, to provide a response.

On March 23, 2018, Bar Counsel wrote to Respondent, advised him that Mr. Ahmasi's complaint had been docketed for further investigation, provided copies of the prior correspondence, and requested a written response within ten days. Respondent received Bar Counsel's letter dated March 23, 2018, but failed to provide a timely response. Also on March 23, 2018, Mr. Khan filed a complaint with Bar Counsel.

On March 26, 2018, Bar Counsel sent Respondent a second letter, this time via certified mail, again requesting a written response to the Princes' complaint. On April 4, 2018, that letter was returned unclaimed.

On March 29, 2018, Bar Counsel wrote to Respondent, provided him a copy of Mr. Khan's complaint, and requested a written response within fifteen days. On March 30, 2018, Respondent sent an email to Bar Counsel acknowledging receipt of the additional complaints and stated that he would be providing responses to the complaints "on a rolling fashion during [sic] next week." Bar Counsel replied to Respondent's email and granted Respondent an extension through April 6, 2018, to provide responses to the complaints. On April 1, 2018, Respondent sent an email to Bar Counsel stating that he had retained a new attorney to represent him in the grievance matters. The attorney never contacted Bar Counsel.

On April 26, 2018, Mr. Kabat filed a complaint with Bar Counsel on behalf of Ms. Williams. On May 3, 2018, having received no response to Mr. Khan's complaint, Bar

19

Counsel sent Respondent a certified letter requesting a response to the complaint no later than May 11, 2018. Respondent received Bar Counsel's certified letter dated May 3, 2018, but failed to respond in any manner. On May 8, 2018, Bar Counsel wrote to Respondent, provided him a copy of Mr. Kabat's complaint, and requested a written response no later than May 29, 2018. Respondent received Bar Counsel's letter dated May 8, 2018, but failed to respond in any manner.

On May 16 and May 29, 2018, Bar Counsel received complaints from Mr. King and Mr. Menendez. On September 11, 2018, Bar Counsel wrote to Respondent advising him that the Khan, Kabat, King, and Menendez matters had been docketed for further investigation. Bar Counsel requested that Respondent provide a written response to all four complaints, complete client files for each matter, and complete financial records for each matter no later than September 21, 2018. On September 21, 2018, Respondent sent an email to Bar Counsel requesting an extension through October 1, 2018 to provide a response to the complaints. Bar Counsel granted Respondent's extension request.

On October 1, 2018, Bar Counsel served Respondent with a subpoena to appear at the Office of Bar Counsel on October 15, 2018, to give a statement under oath. On October 3, 2018, having received no response to the September 11, 2018 letter, Bar Counsel sent Respondent an email reminding him that his response was due October 1, 2018.

On October 4, 2018, Respondent replied to Bar Counsel's email and advised that he would be providing a response later that day. On October 5, 2018, Respondent provided Bar Counsel with a written response to the Khan, Kabat, King, and Menendez complaints. In his response, Respondent admitted that he failed to deposit client funds into an attorney

20

trust account and that there were "communication issues" with the clients. Respondent failed to include copies of client files citing an issue with his "zip file," and stated that if he could not resolve the issue, he would deliver "a cd or usb" to Bar Counsel's office. Respondent failed to deliver the requested client files or financial records to Bar Counsel's office.

On October 15, 2018, Respondent appeared at Bar Counsel's office for the statement under oath. Respondent failed to bring any of the client files or financial documents requested by Bar Counsel. On October 16, 2018, Bar Counsel wrote to Respondent requesting information, including copies of the complete client files and bank account information no later than October 22, 2018. Respondent received Bar Counsel's letter dated October 16, 2018, but failed to provide a timely response.

On October 23, 2018, after receiving no response, Bar Counsel sent Respondent an email reminding him of the deadline. On October 25, 2018, Respondent replied to Bar Counsel's email and advised that he would be providing the requested information and documentation "by Monday evening of next week," i.e., October 29, 2018. On October 31, 2018, after receiving no response, Bar Counsel sent Respondent an email inquiring about the status of the requested information and documentation. On November 5, 2018, Respondent provided documentation related to his representation of Mr. Menendez and advised that Respondent would "follow up with the other client files."

Between May 2017 and November 2018, Respondent failed to respond to seven requests for information and documentation from Bar Counsel. While Respondent provided partial responses in the Burton, Khan, Williams, King, and Menendez matters,

21

the responses were untimely and wholly insufficient. Respondent failed to provide client files for the Irvin, Burton, Ahmasi, Kanu, Tyner, Princes, Khan, Williams, and King matters and failed to provide any financial records or his bank account information.

## II.

## The Hearing Judge's Conclusions of Law

Based on the record and the above-summarized findings of fact, the hearing judge concluded, by clear and convincing evidence, that Respondent violated MARPC 19-301.1, 19-301.2(a), 19-301.3, 19-301.4, 19-301.15(a) and (c), 19-301.16(d), 19-303.2, 19-305.5(a), 19-308.1(b), and 19-308.4(a), (c), and (d), as well as the Business Occupations and Professions Article §§ 10-304(a) and 10-306. Neither Respondent nor Petitioner filed exceptions.

## III.

## Standard of Review

"This Court has original and complete jurisdiction in an attorney disciplinary proceeding and conducts an independent review of the record. The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous . . . . We review the hearing judge's conclusions of law without deference." *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 682–83 (2019) (internal quotations and citations omitted).

# IV.

## Discussion

We turn now to the hearing judge's conclusions of law. For reasons we explain below, we agree with the hearing judge's conclusions of law that Respondent violated MARPC 19-301.1 (Competence), 19-301.2(a) (Scope of Representation), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.15(a) and (c) (Safekeeping of Property), 19-301.16(d) (Declining or Terminating Representation), 19-303.2 (Expediting Litigation), 19-305.5(a) (Unauthorized Practice of Law), 19-308.1(b) (Bar Admission and Disciplinary Matters), and 19-308.4(a), (c), and (d) (Misconduct), as well as the Business Occupations and Professions Article §§ 10-304(a) and 10-306.

### *MARPC Rule 19-301.1 Competence*

Rule 19-301.1 provides: "An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness[,] and preparation reasonably necessary for the representation." "This Court has made clear that a complete lack of representation is incompetent representation." *Edwards*, 462 Md. at 694 (internal quotations and citations omitted). Generally, this Court will find a violation of Rule 19-301.1 "if an attorney fails to act or acts in an untimely manner, resulting in harm to his or her client." *Id.* An attorney violates the Rule when he "fail[s] to notify [the client] of his court dates, fail[s] to appear on his behalf, and fail[s] to adequately pursue the appropriate relief on his behalf." *Attorney Grievance Comm'n v. Aita*, 458 Md. 101, 132 (2018). "It is a particularly egregious violation" of the Rule "for an attorney to fail to

appear without sufficient explanation." *Edwards*, 462 Md. at 694–95 (internal quotations and citations omitted).

The record is clear that Respondent violated Rule 19-301.1 when he (1) failed to submit the required documentation to the IRS in the Irvin matter; (2) failed to effectuate timely service on Mr. Smoot in the Burton matter; (3) failed to pursue a consent judgment against Nucore or take any other actions to recover the funds owed to BizTech; (4) failed to attend two court hearings in the Kanu matter; (5) failed to attend the June 15, 2017, meeting with Ms. Tyner, and, after June 2017, failed to take any action to advance Ms. Tyner's interests in the eviction case; (6) failed to file a complaint, or take any other action on behalf of MBK, against Central Truck Center, Inc.; (7) failed to properly file Mr. Menendez's trademark applications with the USPTO and, after receiving notices from the USPTO alerting him of the deficiencies, failed to respond an any manner; (8) failed to perform any substantive work on behalf of the Princes, including failing to propound discovery to the Defendants; and (9) failed to perform any substantive work on behalf of Mr. King in his matter. These transgressions, taken either separately or together, constitute clear and convincing evidence that Respondent failed to provide competent representation.

*MARPC Rule 19-301.2(a) Scope of Representation*

Rule 19-301.2(a) provides:

Subject to sections (c) and (d) of this Rule, an attorney shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. An attorney may take such action on behalf of the client as is impliedly authorized to carry out the representation. An attorney shall abide by a client's decision whether to settle a matter.

24

The Rule requires an attorney to "inform a client of the status of his or her case so the client has the ability to make informed decisions[.]" *Edwards*, 462 Md. at 697 (internal quotations and citations omitted). "An attorney's failure to prosecute her client's case, combined with a failure to communicate with the client about the status of the case, may constitute a violation of this [R]ule." *Id.* (quoting *Attorney Grievance Comm'n v. Bellamy*, 453 Md. 377, 394 (2017)).

We agree with the hearing judge that Respondent violated Rule 19-301.2(a) for the same reasons discussed in reference to Rules 19-301.1 and 19-301.4. On numerous occasions, Respondent violated the Rule by failing to inform his clients of the status of their cases and failing to consult with or respond to his clients.

*MARPC Rule 19-301.3 Diligence*

Rule 19-301.3 provides: "An attorney shall act with reasonable diligence and promptness in representing a client." The Rule "can be violated by failing to advance the client's cause or endeavor; failing to investigate a client's matter; and repeatedly failing to return phone calls, respond to letters, or provide an accounting for earned fees[.]" *Edwards*, 462 Md. at 699 (internal quotations and citations omitted). The same rationale that supports a Rule 19-301.1 violation can support a Rule 19-301.3 violation. *Id.*

We agree with the hearing judge that Respondent violated Rule 19-301.3 for the same reasons discussed in relation to Rules 19-301.1 and 19-301.4.

*MARPC Rule 19-301.4 Communication*

Rule 19-301.4 provides:

(a) An attorney shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0 (f) (1.0), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.
(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The Rule "requires attorneys to communicate with their clients and keep their clients reasonably informed of the status of their case." *Edwards*, 462 Md. at 699.

We agree with the hearing judge's conclusion that Respondent violated Rule 19-301.4(a) and (b) when he failed to provide Mr. Irvin, Ms. Burton, Mr. Ahmasi, Ms. Kanu, Ms. Tyner, the Princes, Mr. Menendez, Mr. King, Mr. Khan, and Mr. Kabat with updates regarding the status of their matters. Respondent further violated Rule 19-301.4 by failing to respond to their numerous attempts to contact him.

*MARPC Rule 19-301.15(a) and (c) Safekeeping Property*

Rule 19-301.15 provides, in part:

(a) An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created. . . .
(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those

26

funds for the attorney's own benefit only as fees are earned or expenses incurred.

Attorneys violate Rule 19-301.15 "if they deposit their clients' money into their personal or operating account before the money is earned." *Edwards*, 462 Md. at 702 (citing *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 53 (2006)).

The hearing judge found that Respondent violated the Rule when he failed to deposit and maintain fees collected from Mr. Irvin, Ms. Burton, BizTech, Ms. Kanu, Ms. Tyner, the Princes, Mr. Menendez, Mr. King, and Mr. Khan into an attorney trust account until earned. Respondent also violated the Rule when he misappropriated the clients' funds for his personal use and benefit without performing any services of value. The record supports the hearing judge's legal conclusions that Respondent violated the Rule by repeatedly failing to deposit and maintain fees collected into an attorney trust account until earned and misappropriating client funds for his personal use and benefit without performing legal services.

*MARPC Rule 19-301.16(d) Declining or Terminating Representation*

Rule 19-301.16(d) provides:

> Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

27

The Rule is violated when an attorney fails to return unearned fees and papers. *Edwards*, 462 Md. at 703 (citing *Attorney Grievance Comm'n v. Moore*, 447 Md. 253, 269 (2016); *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 336 (2013)).

The hearing judge concluded, and we agree, that Respondent violated Rule 19-301.l6(d) when he abandoned Mr. Irvin, Ms. Burton, Ms. Kanu, Ms. Tyner, the Princes, Mr. Menendez, and Mr. King before completing the objectives of the representations. Respondent essentially terminated the representations without giving the clients or the court notice. Respondent further violated the Rule when he failed to provide Mr. Kabat with a copy of Ms. Williams' client file and failed to provide the Princes with a copy of their client file. Respondent also violated Rule 19-301.16(d) when he failed to provide refunds to Mr. Irvin, Ms. Burton, Ms. Kanu, Ms. Tyner, the Princes, Mr. Menendez, Mr. King, and Mr. Khan, despite performing little to no services of value.

*MARPC Rule 19-303.2 Expediting Litigation*

Rule 19-303.2 provides: "An attorney shall make reasonable efforts to expedite litigation consistent with the interests of the client." "An attorney violates [this Rule] by delaying to take fundamental litigation steps in pursuit of the client's interests." *Garrett*, 427 Md. at 226.

Respondent violated Rule 19-303.2 when he failed to timely effectuate service on Mr. Smoot in Ms. Burton's case and failed to propound discovery in the Princes' case.

28

*MARPC Rule 19-305.5(a) Unauthorized Practice of Law; Multi-Jurisdictional Practice of Law*

Rule 19-305.5(a) provides: "An attorney shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." "Where trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law." *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 397 (1996) (citations omitted).

The hearing judge concluded, and we agree, that Respondent violated Rule 19-305.5(a) when he established and maintained an office for the practice of law in the District of Columbia between 2015 and 2016, in violation of District of Columbia Court of Appeals Rule 49.[10]

*MARPC Rule 19-308.1(b) Bar Admission and Disciplinary Matters*

Rule 19-308.1 provides, in part:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not: . . .
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6.

---

[10] District of Columbia Court of Appeals Rule 49 provides, in part:

[N]o person shall engage in the practice of law in the District of Columbia or in any manner hold out as authorized or competent to practice law in the District of Columbia unless enrolled as an active member of the D.C. Bar.

"Failure to respond to Bar Counsel's lawful request for information constitutes a violation of Rule [19-308.1(b)]." *Attorney Grievance Comm'n v. Lang & Falusi*, 461 Md. 1, 60 (2018) (citation omitted).

Respondent violated Rule 19-308.1(b) during Bar Counsel's investigation by knowingly and intentionally failing to respond to the vast majority of Bar Counsel's numerous lawful requests for information and documentation.

*MARPC Rule 19-308.4(a),(c), and (d) Misconduct*

Rule 19-308.4 provides, in part:

It is professional misconduct for an attorney to:
(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

An attorney violates Rule 19-308.4(a) if he violates any other Rule under the MARPC. *Edwards*, 462 Md. at 706. "Dishonest acts, in and of themselves are violative of [Rule 19-308.4(c).]" *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 383 (2009) (citations omitted). "This Court has consistently found that an attorney's misappropriation of client funds violates [MARPC 19-308.4(c).]" *Attorney Grievance Comm'n v. Nussbaum*, 401 Md. 612, 642 (2007) (citing cases). Generally, an attorney violates 19-308.4(d) "when [an attorney's] conduct impacts negatively the public's perception or efficacy of the courts or legal profession." *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 696 (2013) (quoting *Attorney Grievance Comm'n v. Rand*, 411 Md. 83, 96 (2009)). Misconduct that constitutes a violation of 19-308.4(c) may also violate 19-308.4(d). *Edwards*, 462 Md. at 706 (citing

*Attorney Grievance Comm'n v. Worsham*, 441 Md. 105, 129–30 (2014)). "This Court has also found misappropriation of client funds to be prejudicial to the administration of justice in violation of [Rule 19-308.4(d).]" *Nussbaum*, 401 Md. at 642 (citing cases).

The hearing judge concluded, and we agree, that Respondent violated Rule 19-308.4(a) and 19-308.4(c). Having violated several other Rules of Professional Conduct, Respondent violated Rule 19-308.4(a). Respondent violated Rule 19-308.4(c) when he knowingly and intentionally misrepresented to Ms. Kanu and Ms. Tyner that he needed additional funds for filing fees. Respondent also violated Rule 19-308.4(c) when he misappropriated $500 given to him by Ms. Tyner and used those funds for his own personal benefit.

We further agree with the hearing judge that Respondent violated Rule 19-308.4(d) based on Respondent's pattern of neglect and abandonment that caused significant personal and financial harm to his clients and their businesses. Mr. Irvin was unable to attain non-profit status for his business, Ms. Burton was prevented from pursuing her civil suit, BizTech was prevented from collecting on the $150,000 judgment against Nucore, Ms. Kanu was forced to represent herself pro se in two different court hearings despite having paid Respondent for representation, Ms. Tyner was prevented from proceeding with the eviction proceedings against her tenant, the Princes were prevented from pursuing their civil suit, Mr. Menendez was unable to obtain the trademarks for his business, Mr. King was unable to recover the funds from his billing dispute, MBK was prevented from pursuing a civil suit, and Ms. Williams was unable to obtain a copy of her client file in connection with her employment discrimination case. Additionally, Respondent engaged

31

in widespread mismanagement of client funds by consistently failing to deposit client funds into an attorney trust account. Respondent also engaged in deceitful and dishonest conduct by making knowing and intentional misrepresentations to Ms. Kanu and Ms. Tyner and then misappropriating Ms. Tyner's funds for his personal benefit in violation of Rules 19-308.4(c) and (d).

Respondent failed his clients in almost every conceivable way and has fallen woefully short of even the most basic standards of professionalism expected of an attorney. Taken as a whole, Respondent's conduct in this matter brings the legal profession into disrepute and is therefore prejudicial to the administration of justice.

*Business Occupations and Professions Article, §§ 10-304(a) and 10-306*

Section 10-304(a) provides, in pertinent part: "[A] lawyer expeditiously shall deposit trust money into an attorney trust account." Section 10-306 provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

Respondent violated § 10-304(a) when he failed numerous times to deposit client funds in an attorney trust account. Moreover, Respondent violated § 10-306 when he withdrew trust client funds prior to earning them and used the funds for his own benefit as explained above.

## V.

## AGGRAVATING AND MITIGATING FACTORS

"Bar Counsel has the burden of proving the existence of aggravating factors by clear and convincing evidence." *Edwards*, 462 Md. at 708 (citation omitted). "The respondent

32

in an attorney disciplinary proceeding must prove the presence of mitigating circumstances by a preponderance of the evidence." *Id.* (citation omitted).

We recently enumerated the aggravating factors that, if found, are relevant to the appropriate sanction:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [Rules]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018) (citation omitted).

Petitioner alleged the existence of the following aggravating factors: (2) dishonest or selfish motive; (3) pattern of misconduct; (4) multiple offenses; (5) bad faith obstruction of the disciplinary process; (7) refusal to acknowledge wrongful nature of conduct; and (10) indifference to making restitution.

The hearing judge correctly found that Respondent demonstrated a dishonest and selfish motive when he misrepresented to Ms. Kanu and Ms. Tyner that they needed to pay him additional funds for "filing fees." Respondent's misappropriation of Ms. Tyner's $500 payment is further evidence of his dishonest and selfish motive. Having violated multiple Rules in multiple client matters, Respondent has demonstrated a pattern of misconduct and multiple offenses. Throughout Bar Counsel's investigation, Respondent demonstrated bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with

33

Bar Counsel's numerous requests for information. At no point in the disciplinary proceedings has Respondent acknowledged the wrongful nature of his conduct or demonstrated any remorse. Finally, Respondent has shown a complete indifference to making restitution to Mr. Irvin, Ms. Burton, Ms. Kanu, Ms. Tyner, the Princes, Mr. Menendez, Mr. King, and Mr. Khan.

Respondent did not present any mitigating factors and therefore has not proven any mitigation.

## VI.

## THE SANCTION

In deciding the appropriate sanction, "[w]e are guided by our interest in protecting the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Lewis*, 437 Md. 308, 329 (2014) (internal quotation and citation omitted). "As a result, our purpose in deciding the appropriate sanction is not to the punish the lawyer, but to protect the public, and deter other lawyers from engaging in similar misconduct." *Edwards*, 462 Md. at 711 (internal quotation and citation omitted). "When determining the appropriate discipline, we consider the facts and circumstances of each case and order a sanction that is commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.* at 712 (internal quotation omitted).

Disbarment is the appropriate sanction for Respondent's numerous and severe violations of the MARPC and Business Occupations and Professions Article. Respondent abandoned the representation of seven clients. In those matters, Respondent collected fees and then abandoned the client before completing the objective of the representation. In ten

34

client matters, Respondent failed to respond to his clients' requests for information and even sent a mass email directing his clients not to contact him regarding the status of their matters. Respondent failed to deposit and maintain client funds in an attorney trust account until earned in several instances, and Respondent failed to provide his clients with refunds of unearned fees. Furthermore, Respondent engaged in deceitful and dishonest conduct by knowingly and intentionally misrepresenting that he needed additional funds for "filing fees" and subsequently misappropriating one of those payments.

In addition, Respondent failed to provide responses to the majority of Bar Counsel's numerous requests for information and documentation. When Respondent did provide a response, his responses were untimely and incomplete. Respondent failed to participate in the attorney grievance proceeding by failing to: file an answer to the Petition for Disciplinary or Remedial Action; respond to Bar Counsel's discovery requests; and appear at the September 24, 2019, hearing or the hearing before this Court.

The multiple infractions involving multiple client matters warrant disbarment. *See e.g.*, *Edwards*, 462 Md. at 712 (finding a "pattern of dishonesty [involving multiple clients and multiple infractions] in and of itself warrants disbarment"); *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 228–29 (2012) (same). Respondent's neglect of client affairs, including his failure to communicate with his clients or respond to Bar Counsel independently warrants disbarment. *Edwards*, 462 Md. at 712 (citing cases). Furthermore, the "misappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating

35

circumstances justifying a lesser sanction." *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 410 (2001) (internal quotation and citation omitted).

For the reasons set forth in this opinion, we issued a per curiam order disbarring Respondent on March 12, 2020. *Bah*, 467 Md. at 561-62, 2020 WL 1181283, at *1.