*Attorney Grievance Commission v. Celio Warren Young*, Misc. Docket AG No. 23, September Term, 2019, Opinion by Barbera, C.J.

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT —** Respondent Celio Warren Young violated Maryland's Rules of Professional Conduct 1.1, 1.2, 1.3, 1.4, 1.5, 1.8, 1.15, 1.16, 5.5, 7.3, 8.1, and 8.4. These violations principally arose from Respondent's unauthorized practice of law in Maryland without a license; intentional misrepresentations to his client about the status of his case; failure to properly maintain client funds in an attorney trust account; failure to advise his client to seek independent advice before settling a legal malpractice claim against him; failure to use funds to negotiate lower medical expenses for his client as agreed upon in a settlement agreement; and failure to respond to numerous requests for information from Bar Counsel. In conjunction with several aggravating factors, these violations result in disbarment as the appropriate sanction for Respondent's misconduct.

Circuit Court for Prince George's County
Case No. CAE19-28200
Oral argument waived/submitted on papers

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 23

September Term, 2019

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

CELIO WARREN YOUNG

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: March 31, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

We consider in this attorney grievance matter the conduct of Celio Warren Young, an attorney barred in the District of Columbia but not in Maryland. Notwithstanding that he was not then, nor is now, licensed to practice law in this state, Mr. Young ("Respondent") solicited and undertook representation of Mr. Joseph E. O'Pharrow, III, in a personal injury action and related matters arising from an automobile accident in Prince George's County, Maryland, in which Mr. O'Pharrow was seriously injured. The representation spanned several years. Eventually, Mr. O'Pharrow filed a complaint with the Attorney Grievance Commission, prompting the Commission ("Petitioner"), acting through Bar Counsel, to file in this Court a Petition for Disciplinary or Remedial Action ("Petition") charging Respondent with having committed numerous violations of the Rules of Professional Conduct.

Respondent was alleged to have violated numerous provisions of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"): 1.1 (Competence), 1.2(a) (Scope of Representation), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.5(a) (Fees), 1.8(a) and (h) (Conflict of Interest; Current Clients), 1.15(a) and (c) (Safekeeping Property),[1] 1.16(a) (Declining or Terminating Representation), 5.5(a) and (b) (Unauthorized Practice of Law), 7.3(a) (Direct Contact with Prospective Clients), and 8.4(a), (b), (c), and (d) (Misconduct). The Petition further alleged violations of the Maryland Attorneys' Rules of

---

[1] Petitioner later dropped the Rule 1.15(c) charge.

Professional Conduct ("MARPC"): 19-308.1(b) (Bar Admission and Disciplinary Matters) and 19-308.4(a), (c), and (d) (Misconduct).[2]

This Court designated the Honorable Lawrence V. Hill, Jr. of the Circuit Court for Prince George's County to serve as the hearing judge. Respondent did not file an answer to the Petition or respond to Bar Counsel's Request for Admission of Facts and Genuineness of Documents, prompting Petitioner to file a Motion for Order of Default. The circuit court granted the motion for order of default on January 16, 2020. There promptly followed a notice informing Respondent of the order of default and his right to file a motion to vacate that order within thirty days after its entry. Respondent did not file such a motion. *See* Md. Rule 2-613 (b), (c), (d), and (f).

The hearing on the Petition was originally scheduled for February 21, 2020. Soon thereafter, the hearing was continued to July 28, 2020. On that date, a hearing was conducted virtually owing to the COVID-19 pandemic. Respondent did not appear at the hearing or otherwise attempt to provide evidence or argument.

At the hearing, the judge formally deemed admitted and received into evidence Petitioner's requests for admission of facts and genuineness of documents, in accordance

---

[2] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct were renamed the Maryland Attorneys' Rules of Professional Conduct and incorporated within Title 19, Chapter 300 of the Maryland Rules. Petitioner, through Bar Counsel, has invoked both the former and current versions of the Rules. There is no substantive difference in the two codifications of the Rules. We therefore shall employ throughout this opinion the simpler version of the charged rule violations, as set forth in the MLRPC. Consequently, we refer to all charged violations, including those that are alleged to have occurred after recodification, by the form used in the MLRPC, *e.g.*, "Rule 8.1" rather than "Maryland Rule 19-308.1."

with Maryland Rule 2-424(b). On September 8, 2020, the hearing judge filed a Memorandum containing his findings of fact and conclusions of law based upon the averments laid out in the Petition and the deemed admission of facts and genuineness of documents.

On October 13, 2020, Petitioner, through Bar Counsel, filed "Petitioner's Recommendation for Sanction." Petitioner did not except to any of the hearing judge's findings of fact or conclusions of law and recommended disbarment as an appropriate sanction. Respondent filed no paper submission responsive to the hearing judge's factual findings and legal conclusions and in no other fashion took exception to the hearing judge's findings and conclusions.

On November 5, 2020, Bar Counsel filed with this Court a request to waive oral argument. This Court issued a Show Cause Order on November 6, 2020, directing Respondent to show cause by Monday, December 1, 2020 why oral argument should be held. Respondent did not respond to the Show Cause Order on or before the deadline but did file a late response, on December 4, 2020, that did not include a request that oral argument be held.[3]

In resolving this matter on the record before us, we treat as conclusively established the hearing judge's findings of fact, *see* Maryland Rules 2-424(b), (d), and 19-741(b)(2)(A), and, upon reviewing de novo the hearing judge's conclusions of law, we conclude, as did the hearing judge, that Respondent committed multiple violations of the

_____

[3] We shall address later in this opinion information that Respondent supplied in his "Show Cause Order Response."

Rules of Professional Conduct. Those violations, coupled with the aggravating factors we have identified, mandate that Respondent be disbarred.

**I.**

**The Hearing Judge's Findings of Fact**

Respondent was admitted to the District of Columbia Bar on December 6, 1989. He is not, and has never been, a member of the Maryland Bar. At all times relevant to this attorney grievance matter, Respondent maintained an office for the practice of law in the District of Columbia.

*Representation of Joseph E. O'Pharrow, III*

The violations of the Rules of Professional Conduct with which Respondent was charged originate from his representation of Joseph E. O'Pharrow, III, a Maryland resident. On April 29, 2014, Mr. O'Pharrow was seriously injured in an automobile accident in Prince George's County, Maryland. Mr. O'Pharrow was determined not to be at fault in the accident.

Mr. O'Pharrow suffered extensive injuries resulting from the accident, requiring that he undergo several surgeries. His medical expenses exceeded $100,000. Mr. O'Pharrow spent some time recuperating in the hospital. During that time, his parents, Joseph and Earnestine O'Pharrow ("the O'Pharrows"), stayed with him at the hospital as needed.

Respondent lived next door to Mr. O'Pharrow. Upon learning of the accident, Respondent approached Mr. O'Pharrow's parents in the hospital and solicited them to represent their son in a personal injury action. Sometime in May 2014, Mr. O'Pharrow's

4

mother retained Respondent on behalf of her son to represent him on a contingency fee basis. Mr. O'Pharrow agreed to the representation and gave Respondent authorization to communicate with his parents about the case. The hearing judge found that Respondent intentionally misled Mr. O'Pharrow to believe that Respondent was licensed to practice law in Maryland when he was not.

In the summer of 2014, Respondent, evidently with the agreement of at least the O'Pharrows, if not also their son, filed a claim with Government Employees Insurance Company ("GEICO"), the insurance carrier of the driver who was determined to be at-fault in the automobile accident. In or about August 2014, the O'Pharrows accepted the GEICO policy limit of $30,000 as a settlement on behalf of Mr. O'Pharrow.

Respondent received the $30,000 settlement check from GEICO in August 2014 but did not deposit and maintain the settlement funds in an attorney trust account. Of the $30,000, Respondent retained $6,400 for his attorney fees and remitted $23,600 to Mr. O'Pharrow.

Also in the summer of 2014, Respondent filed an underinsured motorist claim with Mr. O'Pharrow's insurance carrier, Erie Insurance Company ("Erie"). In that filing, Respondent failed to provide to Erie the requisite written notice and a copy of GEICO's prior settlement offer, as is required under Md. Code Insurance Article ("Ins. Art.") § 19-511(b).[4] As a result, Erie sent Respondent a letter denying Mr. O'Pharrow's underinsured motorist claim.

---

[4] Ins. Art. § 19-511 sets forth the settlement procedures for submitting an uninsured or underinsured motorist claim in Maryland. Ins. Art. § 19-511(b) provides that:

Respondent received the denial letter from Erie on or about December 12, 2014. It was not until approximately nine months later—sometime during the fall of 2015—that Respondent informed Mr. O'Pharrow of the denial of the underinsured motorist claim. The hearing judge found that Respondent "knowingly and intentionally misrepresented to Mr. O'Pharrow that Erie's denial of the claim was not a final determination."

The hearing judge further found that Erie's denial of the claim was the "result of [Respondent's] legal malpractice." The hearing judge found, moreover, that throughout the course of his representation of Mr. O'Pharrow, Respondent did not advance his client's cause: he failed to investigate the assets of the driver who was at fault in the automobile accident; he failed to ascertain Mr. O'Pharrow's underinsured motorist policy coverage; and he failed to negotiate with Mr. O'Pharrow's healthcare providers.

*The Malpractice Action*

---

> If an injured person receives a written offer from a motor vehicle insurance liability insurer or that insurer's authorized agent to settle a claim for bodily injury or death, and the amount of the settlement offer, in combination with any other settlements arising out of the same occurrence, would exhaust the bodily injury or death limits of the applicable liability insurance policies, bonds, and securities, the injured person shall send by certified mail, to any insurer that provides uninsured motorist coverage for the bodily injury or death, a copy of the liability insurer's written settlement offer.

Under Ins. Art. § 19-511(c), the uninsured motorist insurer shall send to the injured person within 60 days after receiving the notice under subsection (b) either written consent to acceptance of the settlement offer or written refusal to consent to the acceptance of the settlement offer.

In May 2016, Respondent offered to settle a malpractice claim that, at the time of the offer, Mr. O'Pharrow either was contemplating filing or had filed. At that time, Respondent should have, but did not, advise Mr. O'Pharrow, in writing, that it would be desirable to seek independent legal advice before agreeing to settle the malpractice claim.

On May 25, 2016, Respondent and Mr. O'Pharrow entered into an Installment Payment Plan Agreement (the "Payment Plan Agreement") to settle the claim. In the Payment Plan Agreement, Respondent agreed to pay Mr. O'Pharrow $44,208.77 in monthly installments of $5,000 until Mr. O'Pharrow was paid in full. The Payment Plan Agreement did not contemplate or include payment for pain and suffering or for medical expenses Mr. O'Pharrow would likely incur in the future.

Respondent further agreed to maintain an additional $10,272.92 in an escrow account in order to negotiate with Mr. O'Pharrow's healthcare providers a reduction of the amount of the various medical bills he received. Notwithstanding his agreement to do so, Respondent made no attempt to negotiate a reduction of monies Mr. O'Pharrow owed those healthcare providers.

Between July 30, 2016 and October 21, 2016, Respondent made four installment payments to Mr. O'Pharrow for a total of $12,000.00 in the following increments:

7

| Date | Amount | Method |
|---|---|---|
| July 30, 2016 | $2,000.00 | Cash |
| August 2, 2016 | $1,500.00 | Cash |
| Unknown | $2,500.00 | Cash |
| October 21, 2016 | $6,000.00 | Check |

After making the payment on October 21, 2016, Respondent ceased making any further payments pursuant to the Payment Plan Agreement.

In June 2017, after learning that Mr. O'Pharrow might file a complaint with the Attorney Grievance Commission against him, Respondent wrote to Mr. O'Pharrow's mother, stating that he had "figured a [sic] plan to move forward with this matter." At the same time, he bemoaned the fact that, without his bar license, he would be unable to earn any money.

Shortly thereafter, Mr. O'Pharrow and Respondent retained attorneys. Mr. O'Pharrow retained counsel to pursue collection of Respondent's unpaid debt. Respondent also retained counsel to represent him in the debt collection matter.

Sometime in late June 2017, the parties entered into a Settlement Agreement. Pursuant to the Settlement Agreement, Respondent agreed to pay Mr. O'Pharrow an additional $58,000.00 in full and final satisfaction of any and all claims. Respondent was to pay $20,000.00 by July 15, 2017 and then to make monthly payments of $5,000.00 until the remainder of the settlement was paid, with final payment expected to be on March 15, 2018.

As part of the Settlement Agreement, Respondent agreed to execute a confessed judgment promissory note for the entire settlement amount, to be reduced by any of his payments. However, after having signed the Settlement Agreement, Respondent failed to execute the confessed judgment note and failed to make any payments pursuant to the terms of that Agreement.

On September 13, 2017, Mr. O'Pharrow, acting through his counsel, filed a breach of contract action against Respondent in the Circuit Court for Prince George's County. On October 19, 2017, Respondent filed a petition for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the District of Maryland. In March 2018, as a result of Respondent's filing for bankruptcy, the circuit court stayed the proceedings in Mr. O'Pharrow's breach of contract claim against Respondent.

*The Complaint to the Attorney Grievance Commission*
*and Bar Counsel's Investigation*

On August 24, 2017, Mr. O'Pharrow filed with the Attorney Grievance Commission a complaint against Respondent. Between October 25, 2017 and September 6, 2018, Bar Counsel, on behalf of the Commission, wrote nine letters to Respondent at his business address, as well as his two home addresses, requesting a response to the complaint against him.[5] Respondent failed to respond.

---

[5] Although the record contains references to Respondent's two home addresses, the relevant home address is in Upper Marlboro in Prince George's County. The record is unclear as to whether Respondent's second home address is also located in Maryland.

9

In early September 2018, Bar Counsel investigator, Daniel J. Weishaar, called Respondent and left several voicemail messages asking Respondent to return his calls; Respondent responded to none of them. On September 19, 2018, Mr. Weishaar went to Respondent's home address in Prince George's County and delivered to Respondent's wife a copy of Mr. O'Pharrow's complaint and Bar Counsel's previous letter. On September 28, 2018, Respondent called Mr. Weishaar and left a voicemail with the investigator acknowledging that he had received the complaint and letter from Bar Counsel. In that voicemail, Respondent told Mr. Weishaar that he would respond to Mr. O'Pharrow's complaint by the middle of the following week. Respondent did not submit a response.

On October 4, 2018, Respondent spoke with Mr. Weishaar and informed him that he would respond to Mr. O'Pharrow's complaint by close of business on October 8, 2018. As before, Respondent did not respond.

Bar Counsel filed the Petition with this Court on August 27, 2019, and this Court transmitted the matter to the Circuit Court for Prince George's County on September 4, 2019. The circuit court issued a Writ of Summons to Respondent on September 9, 2019. On November 2, 2019, an independent process server attempted to serve Respondent with several documents at his office address, located at 819 7th Street N.W., Suite 400, Washington, D.C. 20001. The documents included the Transmittal Order, the Writ of Summons, the Petition, and Bar Counsel's Request for Admission of Facts and Genuineness of Documents. The process server was unable to serve Respondent because the main door to the building was locked, there was no call box, and no one entered or exited the building while the server was outside.

10

On November 4, 2019, Bar Counsel emailed Respondent notifying him of the failed attempt at service. Bar Counsel attached the service documents to the email and asked whether Respondent would accept service by email. On November 5, 2019, Respondent replied to Bar Counsel's email, stating that he would accept service by email and that his new office address was located at 1616 H Street N.W., Suite 500, Washington, D.C. 20002. On that same date, Bar Counsel gave notice to the circuit court that Respondent had been served with the service documents via email and first class mail, postage prepaid, to both the new office address that Respondent gave Bar Counsel and his home address in Prince George's County.

Other than agreeing to accept service by email, Respondent was non-responsive throughout the entirety of the disciplinary proceeding against him. He did not reply to numerous requests from Bar Counsel for information, nor did he supply a response to the substance of Mr. O'Pharrow's complaint.

## II.

## Discussion

*This Court's Jurisdiction Over Disciplinary Matters*

"This Court has original and complete jurisdiction in an attorney disciplinary proceeding . . . ." *Attorney Grievance Comm'n v. Bah*, 468 Md. 179, 206 (2020) (quoting *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 682–83 (2019)). Pursuant to Rule 8.5(a)(2), our jurisdictional authority extends to disciplining an out-of-state attorney who "(1) provides or offers to provide any legal services in Maryland or (2) holds himself out as practicing law in Maryland." *Attorney Grievance Comm'n v. Ndi*, 459 Md. 42, 54

(2018).  As we shall discuss, the hearing judge's findings of fact, which we accept as established given that neither Petitioner nor Respondent filed exceptions to those findings, *see* Md. Rule 19-741(b)(2)(A), reflect that Respondent engaged in conduct addressed in Rule 8.5(a)(2).  Consequently, he is subject to discipline by this Court for any violations of Maryland's attorney conduct rules.

*The Hearing Judge's Conclusions of Law*

On September 8, 2020, the hearing judge filed a "Memorandum of the Court" recounting the procedural history of the case, adopting the established facts summarized above, and setting forth the judge's proposed conclusions of law.  We turn now to those determinations.

The hearing judge concluded that Respondent violated Rules 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.5(a), 1.8(a) and (h), 1.15(a), 1.16(a), 5.5(a) and (b), 7.3(a), 8.1(b), and 8.4(a), (b), (c), and (d).  For reasons explained below, we agree with the hearing judge that Respondent violated every one of those Rules.

*Rule 1.1 Competence*

Rule 1.1 states that an attorney "shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  In general, an attorney who "fails to act or acts in an untimely manner, resulting in harm to [the] client" violates Rule 1.1. *Bah*, 468 Md. at 207 (quoting *Edwards*, 462 Md. at 694).  We agree with the hearing judge's conclusion that Respondent violated Rule 1.1 in several ways.

12

Respondent failed to deposit and properly maintain Mr. O'Pharrow's funds that were obtained in the settlement with GEICO, the at-fault driver's insurer. In his attempt to file Mr. O'Pharrow's underinsured motorist claim with his insurer, Erie, Respondent failed to supply Erie with a written notice of a prior settlement offer, as required under Ins. Art. § 19-511.[6] Moreover, he did little to nothing to advance Mr. O'Pharrow's personal injury case arising from the automobile accident: Respondent failed to investigate the assets of the at-fault driver; failed to determine Mr. O'Pharrow's underinsured motorist policy coverage; and failed to negotiate a reduction of Mr. O'Pharrow's healthcare providers' liens.

*Rule 1.2(a) Scope of Representation*

Rule 1.2(a) states in relevant part that attorneys are to "abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued." A violation of Rule 1.2(a) occurs when an attorney "fails to inform a client of the status of his or her case, thereby denying the client the ability to make informed decisions." *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 182 (2015); *see also Attorney Grievance Comm'n v. Ambe*, 466 Md. 270, 290 (2019) ("In order for a client to make informed decisions . . . an attorney must give the client honest updates regarding the status of [the] case.") (first alteration in original) (citation omitted).

---

[6] *See supra* note 4.

The hearing judge concluded that Respondent violated Rule 1.2(a) by engaging in acts and omissions that were dishonest. We agree. Respondent led Mr. O'Pharrow to believe that he was licensed to practice law in Maryland when he was not, foreclosing an opportunity for Mr. O'Pharrow to retain a Maryland-licensed attorney. Once retained, Respondent failed for many months to inform Mr. O'Pharrow of Erie's denial of the underinsured motorist claim and, when Respondent finally disclosed that information, he misrepresented to Mr. O'Pharrow the final status of the claim denial. Respondent further denied Mr. O'Pharrow the opportunity to make an informed decision concerning the scope of the representation by failing to inform him of the opportunity to seek the advice of independent counsel before settling his malpractice claim against Respondent.

*Rule 1.3 Diligence*

Rule 1.3 provides that an attorney "shall act with reasonable diligence and promptness in representing a client." An attorney demonstrates a lack of diligence and promptness by "failing to investigate a client's matter" and "failing to advance the client's cause or endeavor." *Bah*, 468 Md. at 208 (quoting *Edwards*, 462 Md. at 699). "The same rationale that supports a [Rule 1.1] violation can support a [Rule 1.3] violation." *Id.* at 209 (citing *Edwards*, 462 Md. at 699). The failure to keep a client informed about the status of the case is a Rule 1.3 violation. *Ndi*, 459 Md. at 55. The hearing judge concluded, and we agree, that Respondent's acts or omissions to act demonstrate a lack of diligence and promptness.

Respondent failed to advance Mr. O'Pharrow's cause by doing almost nothing in connection with the personal injury matter beyond obtaining a $30,000 settlement with

14

GEICO, the at-fault driver's insurer. Respondent did not investigate the assets of the at-fault driver, nor did he determine the scope of Mr. O'Pharrow's underinsured motorist coverage. When Erie denied Mr. O'Pharrow's claim—the result of Respondent's failure to comply with the requirements set forth in Ins. Art. § 19-511—Respondent failed to notify Mr. O'Pharrow in a timely manner that the Erie claim had been denied. He further misled Mr. O'Pharrow to believe that Erie's adverse determination was not final.

Respondent also kept Mr. O'Pharrow in the dark about the status of his legal malpractice claim against Respondent. He did so by neglecting to tell Mr. O'Pharrow about the desirability of seeking independent legal counsel before entering into a settlement agreement with him. Moreover, notwithstanding his agreement with Mr. O'Pharrow to use the $10,272.92 set aside in an escrow account to negotiate a reduction of the amount of money Mr. O'Pharrow owed to his healthcare providers, Respondent did nothing on behalf of Mr. O'Pharrow in that regard.

*Rule 1.4(a) and (b) Communication*

Rule 1.4 provides:

(a) A lawyer shall:
    (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
    (2) keep the client reasonably informed about the status of the matter;
    (3) promptly comply with reasonable requests for information; . . .
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The hearing judge concluded that many, if not all, of Respondent's multiple acts and omissions in connection with Rules 1.1, 1.2, and 1.3 also violated Rule 1.4(a) and (b).

15

As already noted, Respondent misled Mr. O'Pharrow to believe that he was licensed to practice law in Maryland, and he failed to provide timely and accurate information concerning the status of Mr. O'Pharrow's case. Respondent delayed for about nine months before notifying Mr. O'Pharrow of Erie's denial of the underinsured motorist claim, and when he finally disclosed Erie's decision to Mr. O'Pharrow, Respondent intentionally misrepresented to him that Erie's decision was not final. Respondent also led Mr. O'Pharrow to think that he was licensed to practice law in Maryland when he was not, thereby undermining Mr. O'Pharrow's ability to make informed decisions about Respondent's representation.

*Rule 1.5(a) Fees*

Rule 1.5(a) provides in relevant part that attorneys "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." Accepting a fee for the unauthorized practice of law in Maryland is a Rule 1.5(a) violation. *Ndi*, 459 Md. at 57. The hearing judge concluded, correctly, that Respondent violated Rule 1.5(a) by taking a fee for the unauthorized practice of law.

*Rule 1.8(a) and (h) Conflict of Interest; Current Clients*

Rule 1.8(a) provides in relevant part that an attorney "shall not enter into a business transaction with a client unless . . . the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction." Rule 1.8(h) provides:

A lawyer shall not:

16

(1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or

(2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.

These rules are designed to prevent "overreaching" when an attorney "engages in a financial transaction with a client, given a lawyer's skill and training and the relationship of trust with a client." *Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 388 (2015) (quoting *Attorney Grievance Comm'n v. Lawson*, 428 Md. 102, 115 (2012)). An attorney violates Rule 1.8 by failing to advise the client in writing of the desirability of seeking independent legal advice before entering into a settlement agreement with the attorney. *Id.*; *see also Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 365 (2006) (determining that the attorney violated Rule 1.8 by seeking to have his client sign a release of any malpractice claims against him without advising the client of the desirability of obtaining independent counsel before signing).

The hearing judge concluded, and we agree, that Respondent violated Rule 1.8(a) and (h). Respondent did so by failing to advise Mr. O'Pharrow, in writing, of the desirability of seeking the advice of independent legal counsel before entering into a settlement agreement with Respondent on the legal malpractice claim.

*Rule 1.15(a) Safekeeping of Property*

Rule 1.15(a) provides in relevant part that an attorney "shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property." The rule "requires an attorney to maintain client funds

17

in a trust account, separate from the attorney's personal and operating funds." *Attorney Grievance Comm'n v. Mungin*, 439 Md. 290, 307 (2014) (citation omitted); *see also Ndi*, 459 Md. at 57–58. The hearing judge correctly determined that Respondent violated Rule 1.15(a) by failing to deposit and maintain the GEICO settlement funds in an attorney trust account.

*Rule 1.16(a) Declining or Terminating Representation*

Rule 1.16(a) prohibits in relevant part an attorney from representing a client where that representation would result in a violation of a Rule of Professional Conduct or other law. The established facts support the hearing judge's conclusion that Respondent violated Rule 1.16(a). During the relevant time period, Respondent did not (and does not now) have a license to practice law in Maryland. Respondent nevertheless represented Mr. O'Pharrow in the personal injury matter arising from injuries he sustained in an automobile accident in Maryland.

Attorneys are further obligated to withdraw from the representation when they become aware that their "interests [are] untenably at odds with [their] client's" when they face a potential malpractice claim from the client stemming from their legal representation. *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 173 (2010). The attorney must advise the client of the desirability of seeking the advice of independent counsel if the attorney faces a potential claim of legal malpractice from that client. *Id.* The interests of attorney Bleecker became at odds with his client once he learned that the statute of limitations had expired, thereby precipitating a potential malpractice claim from his client. *Id.* Similarly, Respondent's interests became "untenably at odds" with his client's interests

18

once he learned that he faced a potential legal malpractice claim from Mr. O'Pharrow. *See Shapiro*, 441 Md. at 392–93 (stating that an attorney's failure "to withdraw immediately after learning of the potential cause of action that [his client] may have had against him" was an "ethical lapse [that] violated [Rule] 1.16").

Respondent further violated his obligation to Mr. O'Pharrow by offering to settle the claim without recommending that Mr. O'Pharrow seek independent legal advice. Furthermore, once he proposed a settlement, Respondent should have withdrawn his representation of Mr. O'Pharrow. He did not do so; indeed, he continued to have an obligation to negotiate with Mr. O'Pharrow's medical providers pursuant to the Payment Plan Agreement.

*Rule 5.5(a) and (b) Unauthorized Practice of Law; Multijurisdictional Practice of Law*

Rule 5.5(a) states that an attorney "shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." Rule 5.5(b) provides in relevant part that an attorney "who is not admitted to practice in this jurisdiction shall not: . . . (2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction."

In *Ndi*, an attorney authorized to practice law in New York, but not Maryland, violated Rule 5.5(a) and (b) when he represented a client in a personal injury matter in Maryland without a license to practice law in this State. *Ndi*, 459 Md. at 59–60. The facts established in the case before us are essentially the same as those in *Ndi* and likewise violate Rule 5.5(a) and (b).

19

Respondent, not a member of the Maryland bar, solicited the O'Pharrows to represent their son in his personal injury matter in Maryland. Before and during his representation of Mr. O'Pharrow, Respondent knowingly and intentionally misled Mr. O'Pharrow to believe Respondent was authorized to practice law in Maryland. The hearing judge concluded, correctly, that Respondent violated Rule 5.5(a) and (b).

*Rule 7.3(a) Direct Contact with Prospective Clients*

Rule 7.3(a) provides, in relevant part:

> A lawyer shall not by in-person . . . contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:
> (1) is a lawyer; or
> (2) has a family, close personal, or prior professional relationship with the lawyer.

We agree with the hearing judge's conclusion that Respondent violated Rule 7.3(a) when he solicited the O'Pharrows at the hospital to represent their son in his personal injury action. Respondent and Mr. O'Pharrow were neighbors, not family members or close personal friends.

*Rule 8.1(b) Bar Admission and Disciplinary Matters*

Rule 8.1(b) provides that an attorney in connection with a disciplinary matter shall not:

> fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

20

Rule 8.1(b) "requires a lawyer to timely respond to lawful requests for information from Bar Counsel." *Attorney Grievance Comm'n v. Butler*, 441 Md. 352, 359 (2015). Attorneys also must respond to the substance of the complaints in their responses to Bar Counsel. *Attorney Grievance Comm'n v. Dyer*, 453 Md. 585, 674 (2017). The established facts support the hearing judge's conclusion that Respondent violated Rule 8.1(b) during Bar Counsel's investigation by knowingly and intentionally failing to respond to Bar Counsel's numerous lawful requests for information and documentation.

*Rule 8.4(a), (b), (c), and (d) Misconduct*

Rule 8.4 provides, in relevant part:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

Rule 8.4(a) "is violated if any rule under the [Rules of Professional Conduct] is violated." *Edwards*, 462 Md. at 706. As discussed earlier, Respondent violated multiple Rules of Professional Conduct and thereby also violated Rule 8.4(a).

An attorney does not need to have been charged with or convicted of a criminal offense to be in violation of Rule 8.4(b). *Ndi*, 459 Md. at 62; *see also Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 729 (2014). Rather, a court need only find clear and convincing evidence of conduct that would be in violation of a criminal statute. *Agbaje*, 438 Md. at 729; *see also Hamilton*, 444 Md. at 194. "The crux of the 8.4(b) analysis then

21

becomes whether an attorney's criminal act reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." *Agbaje*, 438 Md. at 729–30 (internal quotations and citations omitted).

The hearing judge correctly determined that Respondent violated Rule 8.4(b) by engaging in the unauthorized practice of law, a misdemeanor. *Ndi*, 459 Md. at 62; *see* Md. Code Bus. Occ. & Prof. §§ 10-601, 10-606. The facts establish that, notwithstanding his not having a license to practice law in Maryland, Respondent, on behalf of Mr. O'Pharrow, filed documents with insurance companies and obtained a settlement on his behalf.

An attorney violates Rule 8.4(c) by "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." By knowingly making a false statement, an attorney "necessarily engages in conduct involving misrepresentation." *Attorney Grievance Comm'n v. Steinhorn*, 462 Md. 184, 198 (2018) (quoting *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 708 (2013)). The hearing judge concluded, correctly, that Respondent, while representing Mr. O'Pharrow, engaged in conduct that was replete with dishonesty and deceit, thereby violating Rule 8.4(c).

Respondent intentionally misled Mr. O'Pharrow to believe that he was authorized to practice law in Maryland when he was not. Respondent knew of Erie's denial of the underinsured motorist claim but concealed that material fact from Mr. O'Pharrow for about nine months. Then, when finally he told Mr. O'Pharrow about the denial of the claim, Respondent intentionally misrepresented to his client that the decision was not final. Such misrepresentations constitute a violation of Rule 8.4(c).

22

Respondent engaged in further dishonest conduct during an attempted settlement of Mr. O'Pharrow's legal malpractice claim against Respondent. Under the Payment Plan Agreement, Respondent agreed to set aside $10,272.92 in an escrow account to negotiate a reduction of Mr. O'Pharrow's medical expenses, yet he failed to contact Mr. O'Pharrow's healthcare providers as he had agreed to do. Respondent also agreed to execute a confessed judgment promissory note for the funds owed under the Settlement Agreement, but he subsequently refused to sign it and thereafter made no payments in furtherance of the agreed-upon settlement. This misconduct on the part of Respondent likewise violates Rule 8.4(c).

Rule 8.4(d) prohibits "conduct that is prejudicial to the administration of justice." Attorneys violate Rule 8.4(d) when their conduct negatively affects "the public's perception or efficacy of the courts or legal profession." *Attorney Grievance Comm'n v. Framm*, 449 Md. 620, 663 (2016) (quoting *Attorney Grievance Comm'n v. Reno*, 436 Md. 504, 509 (2014)). Such conduct includes an attorney's "'failing to represent a client in an adequate manner' and 'failing to keep a client informed about the status of a case.'" *Attorney Grievance Comm'n v. Landeo*, 446 Md. 294, 343 (2016) (quoting *Attorney Grievance Comm'n v. Brigerman*, 441 Md. 23, 40 (2014)). An attorney who, without the client's consent, deposits fees into an account that is not an attorney trust account violates Rule 8.4(d). *Attorney Grievance Comm'n v. Haley*, 443 Md. 657, 675 (2015); *Attorney Grievance Comm'n v. Davy*, 435 Md. 674, 707 (2013).

Respondent violated Rule 8.4(d) by failing to provide adequate and effective representation to Mr. O'Pharrow, failing to deposit his settlement funds into an attorney

23

trust account, and engaging in acts of deceit and dishonesty that betrayed the client's trust both during and after the representation.

## III.

## The Sanction

It remains for us to consider the proper sanction. We bear in mind that "the purpose of attorney discipline is to protect the public, not punish the attorney." *Framm*, 449 Md. at 664–65 (quoting *Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 527 (2015)). We remain mindful that our aim is to impose a sanction "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Good*, 445 Md. 490, 513 (2015) (quoting *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 537 (2003)). "We protect the public through sanctions against offending attorneys in two ways: through deterrence of 'the type of conduct which will not be tolerated,' and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Steinberg*, 395 Md. at 372 (quoting *Attorney Grievance Comm'n v. Gore*, 380 Md. 455, 471–72 (2004)) (citation omitted).

In determining the appropriate sanction, we also weigh the attorney's misconduct against any existing mitigating and aggravating factors. *Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 405 (2011). Bar Counsel has the burden to prove the existence of one or more aggravating factors by clear and convincing evidence. *Edwards*, 462 Md. at 708. "The respondent in an attorney disciplinary proceeding must prove the presence of mitigating circumstances by a preponderance of the evidence." *Bah*, 468 Md. at 215

24

(citation omitted). We begin with determining whether any aggravating or mitigating factors are present.

*Aggravating Factors*

We consult the American Bar Association's Standards for imposing sanctions, which lists the following aggravating circumstances:

> Prior disciplinary offenses; whether the attorney acted with a dishonest or selfish motive; whether there is a pattern of misconduct; whether there are multiple offenses; whether there is bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; whether there was a submission of false evidence, false statements, or other deceptive practices during the disciplinary process; whether the attorney refused to acknowledge the wrongful nature of conduct; the vulnerability of victim; whether the attorney has substantial experience in the practice of law; and whether he or she displayed indifference to making restitution.

*Attorney Grievance Comm'n v. Sperling*, 434 Md. 658, 676–77 (2013) (citing Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions) (internal quotations omitted).

Petitioner advances six of those aggravating factors: Respondent demonstrated a dishonest and selfish motive; he engaged in a pattern of misconduct; he committed multiple rule violations; he demonstrated bad faith obstruction of the disciplinary proceedings; he had substantial experience in the practice of law; and he showed indifference to making restitution. Based on the established facts set forth in the record, we conclude that all of Bar Counsel's proposed aggravating factors are supported by clear and convincing evidence.

*Dishonest Motive*

25

Respondent acted with a dishonest motive by making multiple misrepresentations to his client. Respondent concealed from Mr. O'Pharrow (and Mr. O'Pharrow's parents) that he was not licensed to practice law in Maryland. He kept Mr. O'Pharrow in the dark about the denial of the Erie insurance claim. He misrepresented to Mr. O'Pharrow that the decision was not final, failed to advise him to seek independent legal advice before entering into a settlement agreement on the legal malpractice claim, continued to represent him after the possibility of a legal malpractice claim arose, and failed to use funds in an escrow account to negotiate reduced medical expenses for Mr. O'Pharrow.

*Pattern of Misconduct*

Respondent displayed a pattern of misconduct throughout his representation of Mr. O'Pharrow by leading the O'Pharrows to believe that he was authorized to practice law in Maryland when he was not, filing the Erie claim without including the requisite written notice of a prior settlement offer, concealing the denial of the claim for nine months, and, without good faith, entering into settlement agreements with his client.

*Multiple Offenses*

For the reasons described above, Respondent violated multiple Rules of Professional Conduct, including a lack of communication with his client, a lack of adequate and diligent representation, making intentional misrepresentations to his client, practicing law in Maryland without a license, and failing to maintain the client's funds in an attorney trust account.

*Bad Faith Obstruction of the Disciplinary Process*

26

"This Court has found bad faith obstruction when attorneys knowingly failed to respond to Bar Counsel's requests for documents, attend evidentiary hearings, submit written responses, or otherwise fail 'to comply with the rules or lawful directives of the AGC.'" *Attorney Grievance Comm'n v. McLaughlin*, 456 Md. 172, 204 (2017) (quoting *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 340–41 (2013)); *see also Bleecker*, 414 Md. at 177–78 (finding that the aggravating factor of bad faith obstruction of the disciplinary proceedings was implicated when the attorney "repeatedly failed to respond to written requests for information from Bar Counsel in their investigation of [a client's] complaint against him, in violation of Rule 8.1(b)"). Here, Respondent engaged in a bad faith obstruction of the disciplinary process by not responding to Bar Counsel's requests for information or the substance of Mr. O'Pharrow's complaint against him. Respondent was absent from the disciplinary proceeding against him; he did not file any responses, attend his virtual hearing, offer potentially mitigating evidence, or thereafter, file exceptions and seek a sanction lower than that offered by Bar Counsel.

*Substantial Experience in the Practice of Law*

Respondent has substantial experience in the practice of law, given that he has been licensed to practice law in the District of Columbia for thirty-one years.

*Indifference to Making Restitution*

Respondent has shown indifference to making restitution to Mr. O'Pharrow. He failed to make payments pursuant to the Payment Plan and Settlement Agreements.

In sum, we agree with the hearing judge that Petitioner met its burden of proving the existence of those aggravating factors by clear and convincing evidence.

27

*Mitigating Factors*

In his "Memorandum of the Court" issued several weeks after the hearing in this matter, the hearing judge found no proof of mitigation by Respondent given his complete failure to participate at the hearing, either in person, or through some other form of communication that preceded the hearing judge's issuance of the Memorandum. Nor did Respondent file with this Court a Recommendation for Sanction, in which he would have had the opportunity to except to the hearing judge's findings of fact and conclusions of law and to argue for a sanction less than that recommended by Bar Counsel. Simply put, Respondent forewent all timely opportunities to establish mitigation.[7]

---

[7] We do not overlook a last-ditch effort by Respondent to establish mitigation. That effort, however, offers too little and comes too late. As previously noted, on November 5, 2020, Bar Counsel filed a request that this Court waive oral argument in this matter. In response, we issued a "Show Cause Order" requiring Respondent, by December 1, 2020, to show why this matter should not be decided on the papers.

Respondent filed on December 4, 2020—three days *beyond* the Court's stated deadline—a "Show Cause Order Response" ("Response"). Respondent made no attempt to follow this Court's direction to show cause why oral argument should be held. Instead, he offered the following:

- o An apology to this Court and the Attorney Grievance Commission for "not responding to the allegations . . . in a timely manner," adding that "[u]nder normal circumstances, [he] would have responded promptly"; and "despite [his] mental and physical condition, [he] take[s] full responsibility for messing up the O'Pharrow's case."
- o An admission to the "allegation regarding [his] lack of communication" and to "dropping the ball, by not responding openly and in a professional manner for which [he] take[s] responsibility."
- o An acknowledgement that, although he had agreed to make monthly payments under the terms of the Payment Plan Agreement, he desisted from continuing those

28

We turn now to the sanction itself and consider the following. Respondent

intentionally misrepresented to Mr. O'Pharrow that he had a license to practice law in

---

payments and ultimately filed for Chapter 13 bankruptcy.

Respondent also noted the following: his mother died on July 3, 2017; he had a hip replacement in August 2018; and "in April 2019, [he] consulted with [his] physicians" regarding his "stress and functional deterioration, confusion and forgetfulness, that resulted in missing court appearances in the DC Superior Court." Respondent further stated that he is "still under doctor's care [and] hop[es] to get better." Lastly, he acknowledged that he "made one mistake after more than 30 years of practice in the Washington Metro area."

Respondent also attached to the Response the following documents:
- o A "Trustee's Report of Receipts and Disbursements" filed in the U.S. Bankruptcy Court for the District of Maryland for the period from June 1, 2019 to June 1, 2020;
- o A statement of charges from Aventura Orthopedicare Center;
- o A photograph of his deceased mother; and
- o An undated letter from Stephen I. Proctor, M.D., reporting that Respondent suffers from "Reactional Melancholia" due to his mother's death and his hip surgery, resulting in "reactive depression, lack of concentration, and mild confusion at times."

Respondent hopes to have established mitigation. However, that effort falls short of the mark. *See McLaughlin*, 456 Md. at 203–04, 207 (explaining that an attorney who did not participate in her own disciplinary proceedings and made an "eleventh-hour appearance before this Court" had no mitigation available to her since "the availability for consideration of mitigating factors cannot be undertaken where an attorney neither attends his or her evidentiary hearing nor responds to Bar Counsel's requests for written responses to the client's complaint" (citation omitted)); *Attorney Grievance Comm'n v. Harmon*, 433 Md. 612, 629 (2013) ("Because Respondent failed to adequately establish on the record below, and [the hearing judge] made no findings regarding, the 'evidence' presented in mitigation at oral argument, we shall not consider it when raised for the first time before this Court.").

Even if we were to excuse his late-filed response, Respondent was required to establish mitigation by a preponderance of the evidence. Respondent did not carry that evidentiary burden. He consistently failed to respond to, or otherwise comply with, the attorney grievance process. Finally, what Respondent would have us consider as mitigation, including the bankruptcy, his mother's death, his hip surgery, and subsequent "Reactional Melancholia" do not qualify as factors mitigating his misconduct.

Maryland. Further, he showed a lack of the basic attorney skills of competence, diligence, and communication while representing his client: he did not hold settlement funds in an attorney trust account; he concealed the denial of the Erie claim from Mr. O'Pharrow for approximately nine months and lied about its status; and he did not advise Mr. O'Pharrow to secure independent legal advice before entering into a settlement agreement on the legal malpractice claim, all while practicing law in Maryland without a license.

"Absent compelling extenuating circumstances," disbarment is the appropriate sanction for a lawyer's intentional dishonest conduct. *Attorney Grievance Comm'n v. Thomas*, 445 Md. 379, 402 (2015) (quoting *Attorney Grievance Comm'n v. Katz*, 443 Md. 389, 411 (2015)). We have explained that, "[i]n cases involving flagrant neglect of client affairs, including failure to communicate with clients or respond to inquiries from Bar Counsel, we have imposed disbarment as the appropriate sanction." *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 365, 366–67 (2011) (disbarring an attorney who agreed to represent two clients in filing bankruptcy petitions, did not deposit their advance fee payments in an attorney trust account, abandoned his law office, and ignored all of Bar Counsel's requests for information); *see also Attorney Grievance Comm'n v. Wallace*, 368 Md. 277, 293 (2002) (disbarring an attorney who demonstrated a lack of diligence and preparation, failed to communicate with clients, charged unreasonable fees, made misrepresentations, and failed to respond to the requests of Bar Counsel). In *Framm*, we disbarred an attorney who, among other things, did not competently represent or adequately communicate with her client and concealed from the client that the attorney omitted the only available medical evidence to support the client's claims. *Framm*, 449 Md. at 667–

30

68. In *Bleecker*, we disbarred an attorney who concealed from his client and the court that the statute of limitations had expired. *Bleecker*, 414 Md. at 179.

In *Attorney Grievance Commission v. Jacobs*, we held that disbarment was the appropriate sanction for an experienced attorney who, while representing a client in two separate personal injury cases, concealed material facts from the client, including that the matters had been dismissed and that the statute of limitations had expired, and failed to respond to numerous requests from Bar Counsel during disciplinary proceedings. 459 Md. 291, 296–97, 305, 313–14 (2018). We noted in *Jacobs* the presence of multiple aggravating factors and no mitigating factors and that the attorney's concealment left the client "with no means of redress. Obviously, clients seek representation to have the matters resolved, not to have them ignored." *Id*. at 313, 314. The circumstances of the attorneys' misconduct in *Framm*, *Bleecker*, and *Jacobs* provide guideposts for disbarment in the present matter.

Our decision in *Ndi* makes an even stronger case for disbarring Respondent than *Framm*, *Bleecker*, or *Jacobs*. The misconduct in *Ndi* arose from the representation of two clients. *Ndi*, 459 Md. at 48, 49. Mr. Ndi was, at the time at issue, an experienced attorney, barred outside of Maryland. *Id.* at 64, 65. Like Respondent here, Mr. Ndi did not adequately communicate with or represent his clients; he engaged in the practice of personal injury law in Maryland without authorization; he mishandled client funds; and he did not participate in the attorney grievance proceedings, all of which warranted disbarment. *Id.* at 55, 56, 65.

31

Respondent's misconduct necessitates that he be disbarred. Respondent violated numerous Rules of Professional Conduct. We do not overlook that the misconduct in this case stems from the representation of one client. We likewise do not ignore that Respondent has been practicing law for more than 31 years, albeit not always lawfully, as this matter demonstrates. That Respondent is an experienced attorney causes us to assess more critically his many violations of the Rules of Professional Conduct during his representation of Mr. O'Pharrow. Respondent failed to exercise some of the most basic skills required of an attorney in representing a client: competence, diligence, and communication.

Further, Respondent, as in *Ndi*, mishandled client funds by not placing them in an attorney trust account, and he demonstrated bad faith obstruction of the disciplinary proceedings by not responding to multiple requests for responses from Bar Counsel and by not participating in the virtual hearing.

Respondent has not established that the illness and stress stemming from the surgery he underwent in 2018 and the death of his mother in 2017, which he raised for the first time in his late-filed "Show Cause Order Response" to this Court, constitute mitigation or contributed to his misconduct towards Mr. O'Pharrow, the majority of which occurred before 2016. Disbarment is the appropriate sanction for Respondent's misconduct.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR**

32

**OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CELIO WARREN YOUNG.**